## WILLIAM HEISE *vs.* SAMUEL BARTH.

*Partnership — Where persons are Partners as between themselves.*

The appellant and appellee, as managers of a Brewing, Malting and Distilling Company, had charge of all the company's property, and the entire control and general superintendence of all its affairs, including the purchase of whatever was necessary to carry on its business of brewing; paying its debts, and collecting all moneys due it from the sale of beer and other merchandise. For these services the company agreed to pay them five per cent. on all sales of beer or other articles ; and by an arrangement between themselves, this commission was divided in the proportion of three per cent. to the appellant and two per cent. to the appellee. They made purchases to very large amounts in the name of *Barth & Heise*, paid bills rendered to them in that firm name, and gave their joint and several notes, signed in their individual names, to raise money and to pay parties from whom they made purchases. HELD:

That the business in which the parties were engaged, was one in which a partnership might exist, and it might be inferred from their acts and conduct; and from such it was clear a partnership existed between them.

APPEAL from the Circuit Court of Baltimore City.

The bill of complaint in this case, filed on the 8th of December, 1871, by the appellee, charged that he, and the appellant about the year 1868, commenced acting as the managers of the Baltimore County Brewing, Malting and Distilling Company, and as such had charge of all the property of the Company, with the control and superintendence of its affairs ; that they purchased all the goods necessary for the conduct of the business of the company, paid off its debts and liabilities, collected all moneys due from the sale of beer and other merchandise of the company, and gave their notes with personal liability for debts contracted in the conduct of such business, all of which notes were

paid at maturity ; that in consideration of these services the company agreed to pay them a commission of five per cent. on all sales made by them of the entire product of the company's business, and that by an arrangement between themselves, the complainant was to receive two per cent. and the defendant three per cent. of said commission. The bill further charged that when the appellant and appellee undertook the management and control of the business of the company, they found it deeply involved, without credit and in a state of insolvency, and that under their management and through their credit and responsibility, it had become prosperous. It was further charged that the complainant and defendant, were partners *inter sese* in the business thus conducted by them ; that the complainant faithfully discharged the duties devolved upon him, and received his two per cent. commission from time to time as sales were made, until the 29th of June, 1870, when he temporarily left the city of Baltimore, leaving for the defendant only the collections to be made during his absence of some three months, and to apply the proceeds to the payment of the notes that matured during that period ; that the defendant collected divers large sums of money during the complainant's absence and retained the commission of five per cent. and appropriated the same to his own use, and failed and refused to pay to the complainant the two per cent. of said commission due him, although requested so to do. The bill prayed that the defendant should render a full and particular account of all the sales made by him on account of the company, from the 29th of June to the 22nd of October, 1870, the time at which the duties and responsibilities of the complainant as manager, ceased.

The defendant, in his answer to the bill, admitted that the company agreed to pay the commission of five per cent. to the managers, and that in consideration of the performance by him of the most laborious part of the work, he received three per cent. of the commission, while the com-

plainant received two per cent. The defendant denied that the employment of himself and the complainant as managers of the company made them co-partners. The answer admitted that the complainant went to Europe in June, 1870, and averred that prior to that time all matters in which he was interested, were finally settled and adjusted, and as from that time the respondent had to perform all the duties appertaining to the position of manager of the company, he received, as he was entitled to receive, the whole of the five per cent. commission, and denied that the complainant had any interest in said commission, or that he was entitled to any account from the respondent. A commission was issued by agreement and testimony taken. It was admitted that the sales of beer from the 29th of June to the 22nd of October, 1870, amounted to $54,548.46. The Circuit Court, (PINKNEY, J.,) decided that a partnership existed between the complainant and defendant, and that the former was clearly entitled to participate in the commissions earned by the partnership, in the proportion agreed upon; and decreed that the defendant should pay to the complainant, or bring into Court, to be paid to him, the sum of $1090.96, being two per cent. upon the sum of $54,548.46. From this decree the defendant appealed.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and ROBINSON, J.

*Samuel Snowden,* for the appellant.

The existence of a partnership depends upon the voluntary contract of the parties; there can be no such relation established as between themselves, except they so intend it. *Chitty on Con.,* (11 *Ed.,*) 319 *n. z.; Bull vs. Schuberth,* 2 *Md.,* 38; *Hazzard vs. Hazzard,* 1 *Story,* 371; *Kerr vs. Potter,* 6 *Gill,* 423; *Mollwo, March & Co. vs. Court of Wards,* 4 *Privy Council Appeals,* (*L. R.*) 425; *Smith Mer. Law,* 27; *Gow. on Part.,* 8; *Radcliffe vs. Rushworth,* 33 *Beav.,* 484.

In this case there was no express contract for a co-part-nership, and the question presented upon the record is whether or not the facts are such as to authorize the Court to imply a partnership *inter sese,* which requires much stronger proof than to imply a partnership as to third per-sons. *Robinson vs. Green's Adm'r,* 5 *Harrington,* 115 ; *Chisholm vs. Cowles,* 42 *Ala.,* 179.

There was no community of profit and loss, or of profits *qua* profits. *Tudor's L. C., Mer. & Mar. Law,* 335, (*marg.;*) *Hoar vs. Dawes, Doug.,* 371 ; *Felichy vs. Hamilton,* 1 *Wash. C. C.,* 401 ; *Cummings vs. Mills,* 1 *Daly,* 521.

And no common power of binding each other merely by such relation, so that one constituted the other his agent for the transacting of the business. *Cox vs. Hickman,* 8 *H. of L. Cases,* 268 ; *Bullen vs. Sharp;* 1 *Com. Pleas,* 103, (*L. R.;*) *Holme vs. Hammond,* 7 *Exch.,* 229, (*L. R.;*) *Kil-shaw vs. Jukes,* 113 *Eng. C. L. R.,* 846.

And, as therefore, under the authorities, such facts and powers are necessary to constitute a partnership, their absence in this case shows that none was intended.    They signed all notes which were given, not in a firm name, but with their individual names.    They divided the gross earn-ings.    Each had a right to demand and sue in severalty— all of which facts shew there was no partnership *inter sese* intended. *Pattison vs. Blanchard,* 5 *N. Y.,* 186 ; *Heim-street vs. Howland,* 5 *Denio,* 68 ; *Story on Part.,* sec. 34 ; *Parsons on Part.,* 47.

They undertook the performance of a particular contract, to render their joint personal services in the management of the affairs of the company whilst they continued mana-gers, but the money received by them for such services was not to be employed on their joint account, and they were not, therefore, partners, but joint contractors. *Collyer on Part.,* sec. 21 ; *Porter vs. McClure,* 15 *Wend.,* 187 ; *Wil-kinson vs. Jett,* 7 *Leigh,* 115 ; *Finkle vs. Stacy, Macnaugh-ton Sel. Eq. Cases,* p. 9.

The facts that Barth deposited the moneys received by him to his individual account, and when he went to Europe gave Heise a check for the balance, that they severally furnished money for the use of the company; that they were secured by a bond of conveyance of the company's property, and the individual responsibility of the directors, shew beyond question that there was no partnership intended between the parties, but only that they should jointly manage the business of the brewery as its agents, and be severally bound for the contracts they should make on its account, and in case of loss each could have sued the other at law for contribution.

Under this contract with the company both parties were bound to render their joint *personal* services during the year in the management of the affairs of the company, therefore, upon the failure of either to render his *personal* services he ceased to be entitled to any part of the compensation therefor. Like a professional partnership, as the services are *personal* there can be no survivorship. *Holden vs. McMakin,* 1 *Pars. Sel. Eq. Cases,* 270, (302.)

When Barth left for Europe he necessarily ceased to be a co-manager, and Heise performed all the services during the busiest season of the year, he became entitled to all the commissions which the company had agreed to pay to the managers, and this, according to Heise's testimony, was the express understanding with Barth when he went to Europe, up to which time everything was settled between them. If there ever existed any partnership between Barth and Heise as managers, it was formed by the combining of the labor of the two, in order to earn the commission. *Smith Mer. Law,* 19.

And when, therefore, Barth saw proper to withdraw his services he as much dissolved the relation as if he had put in funds as capital and then withdrawn them. His personal services were the capital which he agreed to put in, and when he ceased to render these *eo instanti* he lost all

right to claim any part of the commissions, which were paid *only* for such services, and it would be most unjust that he should receive from Heise a compensation, which had been paid to him by the company for the performance of *all* the services under the contract.  *Parsons on Part.,* 6 ; *Durbin vs. Barber and Barney,* 14 *Ohio,* 311, 313 ; *Marsh's Appeal,* 69 *Penn.,* 33, 35 ; *Hawkins vs. McIntyre,* 45 *Verm.,* 496.

· As there was no contract of partnership between Heise and Barth, and as the matter relating to the management of the business under the joint and several contract with the company, were all settled up to the time of Barth's abandonment of the employment, no bill for an account can be sustained in equity.  *Salter vs. Ham,* 31 *N. Y.,* 321 ; *Rice vs. Austin,* 17 *Mass.,* 197 ; 1 *Bland,* 491, 499.

If there was any money due by Heise to Barth, on account of the business, he could have recovered it by an action at law for money had and received, and, therefore, a Court of Equity has no jurisdiction.  *Hitchings vs. Ellis,* 12 *Gray,* 449.

As the bill prayed for an account, the case should have been referred to the auditor to state an account before the passing of a final decree.  *Bratt vs. Bratt,* 21 *Md.,* 578.

*Robert G. Keene,* for the appellee.

The appellant and appellee, though agents of the company, were "*inter sese*" partners, having a mutual participation in the profits in the shape of commissions on gross returns, and were liable for losses that might be sustained.  If they have an interest in the gross returns and also share in the advances, by means of which these are made, there is necessarily community of profit and loss.  *Lindley on Part.,* 17, 18, 19, 20, (*bot. paging.*) Accounts were made out against them in the name of Barth & Heise.

With respect to the commission, they are mere agents, but as to the *agency itself*, they are traders and partners,

as they ran the risk of losses, and have commissions on sales as their profits. *Waugh vs. Carver*, 2 *H. Blackstone*, 246, 247; *Cheap vs. Cramond*, 4 *Barn. & Ald.*, 663.

In stipulations to share loss, the contract is one of partnership and not a mere agency. *Collyer on Part.*, secs. 30, 45.

From the testimony, it is apparent that the work in buying the hops, malt and other material, and the superintendence of the manufacture of the beer, &c., occurred from October to May, and that during the other months, the great bulk of the sales took place, and the profits consequently accrued to the managers at that time; that the appellant's duties were only to collect the money and pay the notes as they matured, of Barth and Heise, and that although Barth was absent, he was still personally liable on their joint notes.

The bill was filed in view of the parties thereto being partners, *inter sese*, and also for an account in the nature of a bill of discovery. If the Court should be of opinion that no partnership existed, a bill of discovery for an account would give a Court of Equity jurisdiction, as the facts to be proven were only known to the appellant, who refused to give Barth the account of sales; and if equity has jurisdiction of a cause for one purpose it may retain it generally for relief. 1 *Story's Eq. Juris.*, sec. 71; 2 *Story's Eq. Juris.*, secs. 690, 691.

MILLER, J., delivered the opinion of the Court.

The only question of any importance in this case is, were the appellant and appellee partners *inter sese* in the business of conducting, managing and superintending the affairs and operations of the Brewing Company of which they had been appointed managers? As such managers they had charge of all the company's property, and the entire control and general superintendence of all its affairs, including the purchase of whatever was necessary to carry

on its business of brewing, paying its debts and collecting all moneys due it from the sale of.beer and other merchandise. For these services the company agreed to pay them *five per cent.* on all sales of beer or other articles, which by an arrangement between them was to be divided in the proportion of three *per cent.* to the appellant, and two *per cent.* to the appellee.

This is not a case in which the parties held a mere *formal office* in which no partnership can exist. Though as to the company they were its managers or mere agents, there was no difficulty in their becoming partners in the business of the management or agency itself: *quoad hoc*, it is as much a business or trade as the employment of a factor or broker or attorney, in relation to which it is conceded a partnership may exist. This point was not seriously controverted in argument, but as there were no written articles or express parol contract of partnership, and it is to be inferred from the acts of the parties, it is insisted there must be stronger proof to authorize a Court to imply a partnership *inter sese* than to establish one as to third parties. On this subject our own decisions have settled the rule by which we must be guided. There is no doubt of the correctness of the position that parties may be adjudged partners as to third persons when they are not so in fact, *inter sese.* The views of Chancellor KENT, that "there is a just and marked distinction between partnerships as respects the public, and partnerships as respects the parties, and a person may be held liable as a partner to third persons although the agreement does not create a partnership between the parties themselves—actual intention is requisite to constitute a partnership *inter sese*," have been adopted by this Court in *Kerr vs. Potter*, 6 *Gill*, 423. And in *Bull vs. Schuberth*, 2 *Md.*, 55, the Court says, "the fact of the existence or non-existence of a partnership as between the partners themselves must be gathered from the intention. of the parties, and the

Court in arriving at the intention must form their conclusions from deductions drawn by analogy from principles of law applied to the facts and circumstances developed in the case."

Following and applying that rule in this case we have no difficulty in adjudging a partnership between these parties. As we have already said the business or employment in which they were engaged, was one in which a partnership may exist, and the law does not require in any case, that a partnership shall be evidenced by writing or be proved by an express parol agreement to that effect, but it may be inferred from the acts and conduct of the parties. If from these intent to form a partnership appears, it is sufficient. From the admissions in the answer and the proof in the record, it is in our judgment clear these parties by a voluntary contract put into this business in common, their labor, skill and credit in order that there should be a communion of profits arising therefrom between them. They were to receive a definite per centage on the gross sales, but the amount of such sales and the consequent profits depended on the skill, energy and credit which they might have in common and apply to the business. They were appointed to this management because they were possessed of the requisite business capacity, means and credit. When they took charge of its affairs the company was embarrassed and insolvent. Under their management it was relieved and became prosperous. One of them attended more particularly to the out-door business of buying, selling and collecting, the other kept the books, conducted the correspondence, received and paid out the money and attended to the financial operations. The business was large and extensive. They made purchases to very large amounts in the name of *Barth & Heise*, paid bills rendered to them in that firm name, and gave their joint and several notes signed in their individual names to raise money, and to pay par-

ties from whom they made purchases. By this they made themselves equally liable for all debts contracted in carrying on the business. It is true they were secured by a bond of conveyance of the company's property, and the individual security of its directors, but if these had failed all losses would have fallen upon them. They contracted in their own names, and as a firm, and those with whom they dealt trusted solely to their responsibility. They were, therefore, not only primarily and solely responsible to those with whom they contracted these debts, but were ultimately equally responsible for all losses. These facts are in our opinion abundantly sufficient, when the well settled principles of law are applied to them, to warrant the Court in determining that a partnership in this business existed between these parties. We do not deem it necessary to refer to authorities in support of this conclusion.

It is equally clear to our minds that this partnership continued until the 22nd of October, 1870, when the appellee ceased to be a manager of the company. It was not dissolved or terminated by the fact that the appellee left Baltimore on the 29th of June, 1870, on a trip to Europe, and did not return until the 1st of October of that year. The special agreement to that effect, sworn to by the appellant, as having been made at the time the appellee left, is explicitly denied in the testimony of the latter, and is not supported by the facts or circumstances of the case. On the contrary, notes for purchases to a large amount had been given by the appellee, jointly with the appellant, just prior to this period. These notes were running and his liability on them continued during the whole, or a greater part of the time of his absence.

The bill claims the appellee's proportion of the five *per cent.* on sales between the 29th of June, and the 22nd of October, 1870. The proof shows without contradiction, during this period there were sales to the amount of

Chesapeake Bank *vs.* First Natl. Bank.

$54.548.46, and that all the notes of the parties had been paid at the time the bill was filed. The appellee was therefore entitled to two *per cent.* on that sum. To make this simple calculation it was not necessary to refer the case to the auditor for an account. The sum was very properly fixed by the decree without an account.

*Decree affirmed, and
cause remanded.*