# SOUTHERN CAN COMPANY *v.* J. ABNER SAYLER ET AL., RECEIVERS.

*Partnership—What Constitutes—Sharing of Profits—Form of Contract—Not Conclusive—Intention Controls.*

The association of persons to conduct a business in which they have an interest, with a sharing of the profits, unexplained, constitutes a partnership, but if it is clear from the agreement and acts of the parties, and the facts and circumstances, that there was no intention to create a partnership, none will be held to exist.                                   p. 312

The declared intention of the parties in the agreement as to whether they intend to form a partnership is not controlling, since even if they deny an intention by their agreement to form

a partnership, if what they have done creates such a relation, the court will so interpret the agreement and declare the rights and liabilities of partners to exist.                    pp. 312, 313

The sharing of profits is not *per se* conclusive of a partnership, and the real relation may be shown to be other than a partnership in spite of the sharing of profits.                    p. 314

That one has a community of interest in the profits and in the capital employed, and a voice and authority in the conduct of the business, is a strong indication that he is a partner.

p. 314

In determining whether a partnership exists, the test of the intention of the parties, as between themselves, should logically be given great weight, contracts of partnership not differing in this respect from other contracts.                    pp. 314-316

That a person guaranteed a contract by a canning firm for the purchase of cans *held* not to show that, by an agreement which he made two weeks later with the firm, which provided for his sharing in the firm profits, he did not intend to become a partner in the firm.                    pp. 316, 317

An agreement between one who was himself engaged in the canning business and a canning firm, by which he was to furnish the firm with all cans and labels, and make advances necessary for the purchase by the firm of raw stock and for its payroll, he to have the exclusive control and sale of the firm products, to be labeled in his name, and also control of the salaries and wages paid by the firm, and he to receive one-half the profits of the business, *held* to make him a partner in the firm, although the agreement stated that he was to receive the share of the profits "as extra compensation for making the advances."

pp. 316-320

On a petition by a contract creditor of a firm, asserting a decedent's liability as a partner therein, the fact that the firm was differently named in petitioner's contract, and in the later alleged partnership agreement with decedent, was immaterial, it being conceded that the members of the firm remained the same until the making of the later agreement.

*Decided Februray 9th, 1927.*

Appeal from the Circuit Court No. 2 of Baltimore City (FRANK, J.).

Petition by the Southern Can Company asking that J. Abner Sayler and L. B. Keene Claggett, receivers of the estate of Owen A. Hartlove, deceased, be directed to pay a certain claim of said petitioner against the partnership of P. D. Gradman & Brothers, to which said receivers filed an answer, denying that deceased was a member of such partnership, as alleged in the petition. From a decree dismissing the petition, the petitioner appeals. Reversed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*George Weems Williams* and *William L. Marbury, Jr.,* for the appellant.

*Edgar Allan Poe,* for the receivers, appellees.

DIGGES, J., delivered the opinion of the Court.

Owen A. Hartlove, a resident of Baltimore City, trading as the Hartlove Packing Company, was engaged in the packing of canned goods, operating during the year 1925 five canneries in different parts of the state. P. D. Gradman and I. J. Gradman, trading as P. D. Gradman & Brother, were residents of Littletown, Pennsylvania, and were also engaged in the packing of canned goods. During the year 1925 they operated a cannery known as the Melrose Cannery, located in Melrose, Maryland. On the 14th day of April, 1925, the Southern Can Company, the appellant here, agreed in writing to sell at designated prices to P. D. Gradman & Brother all the sanitary tin cans that the buyer should use in packing at all factories owned or controlled by the buyer during the term of the agreement. The term of the agreement was from April 13th, 1925, to December 31st, 1925. By lease dated April 13th, 1925, the appellant also leased to Gradman & Brother, at a rental of one hundred

dollars per year, a machine fitted to close No. 2 cans. On the same day the Hartlove Packing Company, by O. A. Hartlove, guaranteed to the appellant the payment of all bills in accordance with the can contract for P. D. Gradman & Brother, for which at the end of the season a brokerage was to be paid to the Hartlove Packing Company by the appellant, of one dollar per thousand cans; terms of payment providing for settlement thirty days from date of invoices, and all invoices to be mailed to the Hartlove Packing Company at their Baltimore office. On the 2nd day of May, 1925, the following agreement was entered into by and between P. D. Gradman and I. J. Gradman, trading as P. D. Gradman & Company, and Owen A. Hartlove, trading as the Hartlove Packing Company:

"This Agreement, Made this 2nd day of May, 1925, between P. D. Gradman and I. J. Gradman, trading as P. D. Gradman & Company, of Littlestown, Pennsylvania, hereinafter called Canners, and Owen A. Hartlove, trading as the Hartlove Packing Company, hereinafter called Company.

"Whereas the said Canners own and conduct a cannery at Melrose, Maryland, which cannery is fully equipped to can vegetables, and

"Whereas the said Canners desire to employ the said Company for the purpose of selling all goods canned at said cannery, and

"Whereas the said Company has agreed to make advances of money to said Canners for the purpose of purchasing raw materials, cans, cases, labels, etc., and also advance them cash for their payroll from time to time.

"Now, therefore, in consideration of the premises and the faithful performance thereof the parties hereto mutually agree as follows:

"(1) That the said Canners do hereby give unto the said Company the exclusive right to sell all canned goods packed at the Melrose Cannery aforesaid, and all goods so packed shall be labeled in the name of the 'Hartlove Packing Company,' and the said Hartlove

Packing Company shall endeavor to sell, bill and make collections for the articles sold by them, and for said services the said Company shall be paid five per cent. (5%) commission on the gross sales, and in addition thereto said Company shall be given credit of one and a half per cent. (1½%) discount on all gross sales.

"(2) The term of this contract shall start upon the execution hereof and continue until December 31, 1925.

"(3) The said Company agrees, if requested, to furnish all necessary cans, cases and labels for packing said goods, to advance sufficient sums from time to time to pay for all raw stock purchased and used in said Melrose Cannery, and also advance sufficient money from time to time to pay the weekly payrolls at said cannery.

"(4) A strict account shall be kept by all the said parties and said Company shall have a lien upon all goods packed at said cannery as security for the payment of all cans, labels, cases and brokerage and liens as aforesaid, and when sufficient goods are sold to pay for said advances, etc., then the said Company shall make regular payments for the remaining goods sold. Both parties hereto shall keep a complete account of everything done by them, which accounts shall be open to inspection at any time to a representative from the other of said parties.

"(5) At the end of the season aforesaid an accounting shall be made by each of said parties to the other thereof, and the said Canners agree to pay said Company an extra compensation for making the advances, etc., aforementioned, one-half of the net profits resulting from the operation of said cannery, and in figuring said net profits the brokerage and discount, cans, labels, cases, money advanced on raw stock, etc., as aforesaid shall be charged as expenses for running said cannery.

"(6) It is further understood that the said Company shall have the right to determine the salary and wages to be paid at said cannery, and that if said pay-

roll does not meet with his approval, then the said Company shall not be required to make any advances unless the said payroll shall meet with the entire approval and satisfaction of said Company.

"(7) The said Canners shall be fully responsible for the management and control of the said Cannery and shall protect the same by proper insurance policies from loss by fire and shall also carry any other insurance policies which might be required under the laws of the State of Maryland; and it is the intention of this agreement, that this agreement shall not in any manner affect the ownership of said cannery and that the said Canners shall be liable for all losses in connection therewith, and that the said Company shall be repaid for all moneys advanced and for cans, labels, cases, raw stock, etc., at the end or during said season, regardless of whether the goods sold for said reason shall realize a profit to said Canners.

"(8) It is further understood that the said Canners shall devote their exclusive time to the management and operation of said cannery at Melrose, Md., and will not permit anything of any nature to interfere with the conduct of same.

"(9) All goods manufactured shall be labeled as aforesaid under the name of the "Hartlove Packing Company" and stored in its name, and immediately thereafter the Company shall be notified that said goods are at the disposition of said Company, and said Canners agree not to remove any of said goods without first getting the written consent of said Company.

"Witness the hands and seals of the parties hereto the day and year first above written.

"P. D. Gradman & Company,
"P. D. Gradman.    (Seal)
"I. J. Gradman.    (Seal)
"Hartlove Packing Company,
"O. A. Hartlove.    (Seal)

"Test: Thos. M. Glass."

Owen A. Hartlove died on November 5, 1925. On November 9, 1925, his son, Owen G. Hartlove, was appointed admin-

istrator of his estate. On December 24, 1925, P. D. Grad-
man and Isadore J. Gradman, co-partners trading as P. D.
Gradman & Company, filed a petition in the Orphans' Court
of Baltimore City, alleging the death of Owen A. Hartlove,
that said decedent, during his lifetime, was engaged in the
packing and canning business under the name of the Hart-
love Packing Company; that the petitioners were owners of
a canning plant located in Melrose, Maryland, which plant
was opened about the 1st day of July, 1925; alleging sub-
stantially the agreement between them and Owen A. Hart-
love, and filing a copy of the same; that the business of the
petitioners was a seasonal one, and the entire season's pack-
ing had been completed and the product sold prior to the
death of Owen A. Hartlove, but up to that time no account-
ing had been had between the parties to the contract. The
petitioners further allege that during the past few weeks
they have had an accounting with the administrator, show-
ing that after the deduction of all advances and other sums
due the said Owen A. Hartlove under the contract, and the
allowance to him of fifty per cent. of the profit upon the
season's business, there was in the estate of said Hartlove
funds of the partnership, belonging to the petitioners, amount-
ing to $2,877.19; that the administrator admitted the cor-
rectness of their claim, and is willing to pay over to them
the amount claimed, provided he is authorized to do so by the
Orphans' Court; and further alleging that they are advised
that said funds, being partnership funds, constitute no part
of the estate of the said Owen A. Hartlove, except to the
extent of his share thereof.

Upon this petition the Orphans' Court of Baltimore City
authorized and directed Owen G. Hartlove, administrator,
to pay the petitioners the sum of $2,877.19.

On the 2nd day of March, 1926, Herman Gamse &
Brothers filed a similar petition in the Orphans' Court, alleg-
ing that the estate of Owen A. Hartlove was indebted to
them in the sum of two hundred and thirty-five dollars for
labels furnished to the Melrose Cannery, and that, in the ac-

counting between Gradman Brothers and the estate of Owen A. Hartlove, the said estate was allowed a credit for this sum; and praying that the Orphans' Court might pass an order directing that the administrator should pay Herman Gamse & Brothers the said sum; which order was passed by the Orphans' Court and the amount of two hundred and thirty-five dollars paid by the administrator to Gamse & Brothers.

Subsequently, on the 16th day of August, 1926, the Metal Package Corporation filed a bill in Circuit Court No. 2 of Baltimore City against Owen G. Hartlove and others for the purpose of having receivers appointed for the property and assets alleged to belong to Owen A. Hartlove, deceased; and in pursuance of said bill, receivers were duly appointed and qualified. Whereupon the administrator paid over and delivered to the receivers all the property then in his hands as administrator.

The stipulation in the record discloses that, at the time the Southern Can Company made the contract with the firm of P. D. Gradman & Brother, and also made the lease referred to, the firm of P. D. Gradman & Brother consisted of P. D. Gradman and I. J. Gradman; that at the time the said Owen A. Hartlove, trading as the Hartlove Packing Company, made the contract of May 2nd, 1925, with P. D. Gradman & Company, said P. D. Gradman & Company was composed of P. D. Gradman and I. J. Gradman; that all the cans furnished by the Southern Can Company were used by P. D. and I. J. Gradman, trading as P. D. Gradman & Company, in putting up the products of the Melrose Cannery under the agreement of May 2nd, 1925; that the season of 1925 was the first season that the Melrose Cannery was operated by the Gradmans; that the Melrose Cannery was rented by P. D. Gradman & Company, the Hartlove Packing Company having nothing to do with the renting of the said cannery; that the rent paid for the same for the season of 1925 was two hundred and twenty-five dollars, which sum was treated as an item of expense in the accounting between P. D. Gradman & Company and the administrator of Owen A. Hartlove.

Upon a hearing of the case, the lower court decided that
Owen A. Hartlove was not a co-partner of P. D. Gradman
& Company in the conduct of the Melrose Cannery; and the
petition of the appellant was by decree dismissed.

The question here for decision is: Were Owen A. Hart-
love and P. D. Gradman & Company partners in the conduct
of the Melrose Cannery during the season of 1925; this being
the only question presented by the appeal. The appellant
here makes no claim that Owen A. Hartlove held himself
out to be a partner of the Gradmans, nor that the cans were
delivered to the Melrose Cannery with any knowledge that
Hartlove was a partner; their claim being that Hartlove was
in fact a member of the partnership, and as such, liable to
creditors for goods delivered to the partnership and used in
the business of the partnership while he was a member; that
Owen A. Hartlove was a dormant partner and not a partner
by estoppel. In other words, to enable the appellant to re-
cover, it must be shown that Owen A. Hartlove and P. D.
Gradman & Company were partners *inter sese*.

Code, art. 73A, sec. 7, par. 1, provides: "Except as pro-
vided by section 16, persons who are not partners as to each
other are not partners as to third persons." Section 16, re-
ferred to, deals with partners by estoppel or holding out.
Paragraph 4 of section 7 provides: "The receipt by a person
of a share of the profits of a business is *prima facie* evidence
that he is a partner in the business, but no such inference
shall be drawn if such profits were received in payment:
* * * (d) as interest on a loan, though the amount of pay-
ment vary with the profit of the business." Section 6 of the
same article thus defines a partnership: "A partnership is an
association of two or more persons to carry on, as co-owners,
a business for profit." Article 73A is a uniform law which
has been adopted at this time by sixteen of the states of the
Union.

The definition of a partnership, as prescribed by this arti-
cle, is one of the many definitions adopted by courts of last
resort prior to the enactment of the statute. This Court

in the case of *Rowland v. Long,* 45 Md. 439, said: "What-ever conflict there may be in the decided cases as to what are the elements necessary to constitute a partnership, and however difficult it may be to lay down definite rules as applicable to all cases, it is well settled, we think, that where two persons agree to carry on a trade or business for their mutual benefit, one to furnish the money and the other to perform certain labor and services, and each to share the profits to be derived from said trade or business, they become liable as partners *to third persons,* although no partnership was contemplated by the parties themselves. In such a case, each party has an *interest or property in the profits as profits,* and is entitled to an account for the same."

In the later case of *Thillman v. Benlon,* 82 Md., at p. 73, it was said: "We take it then to be well settled that a part-nership is a contract of some kind involving mutual consent of the parties, and when such a contract is entered into be-tween two or more persons for the purpose of carrying on a trade or business, with the right to participate in the profits of such trade or business, then such a contract constitutes a partnership unless there be other facts and circumstances which show that some other relation existed."

The Court, in referring to the case of *Rowland v. Long, supra,* then distinguished it from the case under considera-tion by stating: "There being no other facts in that case to rebut the presumption arising from a participation in the profits of the trade or business, or to show that any other relation existed between the parties."

It seems well settled that the association of two or more persons to conduct a business in which the parties have an interest and where the parties share in the profits, unex-plained, constitutes a partnership; but if it is clear from the agreement and acts of the alleged partners, together with the facts and circumstances surrounding the conduct of the business, that the parties themselves did not intend to create a partnership, none will be held to exist. The declared inten-tion of the parties in the agreement, as to whether they intend

to form a partnership, is not controlling; for even if the parties deny an intention by their agreement to form a partnership, if what they have done creates the legal relation or status of a partnership, courts will so interpret the agreement and declare the rights and liabilities of partners to exist. As was said in *Thillman v. Benton, supra,* quoting *Mollwo, March & Co. v. Court of Wards,* L. R. 4 P. C. 419: "If cases should occur where any persons under the guise of such an arrangement, that is, the guise of an arrangement, as creditor and debtor, are really trading as principals and putting forward as ostensible traders, others who are really their agents, they must not hope by such devices to escape liability, for the law in cases of this kind will look at the body and substance of the arrangement, and fasten responsibility on the parties according to their true and real character." It is a question of substance and not of form.

There are a number of tests applied by the courts to determine the existence *vel non* of a partnership. As a result of an examination of many cases, one is certain to reach the conclusion that no one fact or circumstance can be taken as an unfailing criterion as to the existence of a partnership.

The test of sharing profits, in the early English decisions, was held to be conclusive, upon the theory that, by taking part of the profits, there is taken from the creditors a part of that fund which is security for the payment of their debts; this view being also followed by courts in this country. By the weight of authority, the accepted view today is that the sharing of profits is not *per se* conclusive of partnership (20 *R. C. L.* 824), but that the real relationship may be shown, from the agreement and circumstances, as being one which does not constitute a partnership, even though the alleged partner participates in the profits. The latter view is embodied in paragraph 4, section 7, article 73A. The provisions of this paragraph introduce nothing new into the law of this state on the subject, but are only declaratory of what has been said by this Court in previous cases. In *Thillman v. Benton, supra,* we said: "Now it may true

that a participation in the profits of a business standing alone would, unless explained, lead to the conclusion that the business was carried on for the mutual benefit and by the joint authority of all the parties participating in such profits. But when the participation in such profits arises from a particular clause in an 'agreement between the parties, before you can justly say that such participation is *prima facie* evidence of a partnership, it will be necessary to look not only to that clause, but all other clauses in the contract, and then determine whether the contract taken as a whole justifies the conclusion that there is a partnership, that is, whether there is a joint business carried on in behalf of all the parties or whether the transaction is one of loan between debtor and creditor, the loan or interest on the loan to be paid by an amount equal to a certain share in the profits."

Another test, often applied, is whether the supposed partner acquired by his agreement or arrangement any control, as owner, over the profits while they remained undivided. That is to say, if the supposed partner had an interest in the undivided profits, *as profits,* it would indicate that he was a partner; while if the arrangement in respect to the profits was simply for the purpose of determining the fund from which or the amount to which the supposed partner would be entitled as compensation for services or money advanced, he would not necessarily be a partner.

Still another test is that of community of interest. If the supposed partner has a community of interest in the profits and in the capital employed, and a voice and authority in the conduct of the business, it would be a strong indication of a partnership. In 20 *R. C. L.* 831 it is said: "The particular test as to the existence of a partnership relation which is most widely accepted today, and which is applicable especially as between the parties themselves, irrespective of the right of third persons, is that a partnership is formed and exists only when it is the intention of the parties that they should be partners. Partnership contracts,

like other contracts, are governed by the intention of the parties. * * * This intent may be manifest by the terms of their agreement, the conduct of the parties to each other under it, or by the circumstances generally surrounding the transaction."

In *Cannon v. Brush Electric Co.,* 96 Md. at p. 469, we said: "In the first place it is nowhere in this case pretended that any of the stockholders of the United States Company ever intended to assume the responsibilities of an agent or a partner or indeed any other responsibility than that of a stockholder in a regularly and legally incorporated company under the laws of Maryland." In that case it was con tended that the stockholder occupied the position of a partner. In *Waring v. National Marine Bank of Baltimore,* 74 Md. 278, in passing upon the question of partnership, it was said: "Persons by their conduct and course of dealing may be held liable as partners to third parties dealing with them, even though there was in fact no agreement of partnership. But the question of partnership *inter sese* is one of intention, and it may be laid down as a general rule that no such partnership can exist against the consent and intention of the parties." In *Bull v. Schuberth,* 2 Md. 55, the Court said: "The fact of the existence or non-existence of a partnership as between the parties themselves, must be gathered from the intention of the parties." In *Morgart v. Smouse,* 103 Md. 408, we said: "As between the parties, partnership is a matter of intention to be proved by the express agreement or inferred from their acts and conduct. If they intend to and do enter into such a contract as in the eye of the law constitutes a partnership, they thereby become partners, whether they are designated as such or not in the contract." See also *Kerr v. Potter,* 6 Gill, 423; *Heise v. Barth,* 40 Md. 259; *Tomlinson v. Dille,* 147 Md. 161.

It is thus seen that all of these tests have been applied in cases involving the question before us; any given decision being controlled by the application of one or more of these tests, according to the facts in the particular case. In this

Court, as between the parties alleged to be partners, the test of the intention of the parties has been more often applied as the controlling element. This action is in harmony with the prevailing view throughout the country. In addition, the test of the intention of the parties, as between themselves, logically should be given great weight. In this respect contracts of partnership do not differ from other contracts, and if the real and honest intention of the parties can be clearly ascertained, it should be given force and effect.

Applying these tests to the facts of this case, we find an agreement entered into between two parties engaged in the same line of business, a situation in which it would be natural and logical that they should form a partnership for the conduct of a similar business. Next we have Gradman & Brother, one of the alleged partners, entering into a contract with the appellant under which all of the cans used at the Melrose packing house were furnished, the payments under this contract being guaranteed by Owen A. Hartlove, the other alleged partner. ✗ This contract and guarantee was made about two weeks prior to the agreement between the alleged partners, and there is no suggestion in the record, or offered by counsel for the appellee, why Hartlove would guarantee the payment of a sum of over nine thousand dollars unless he had the intention of participating in the operations of the packing house where these cans were to be used. It may be argued that this guarantee indicated that Hartlove did not intend to become a partner for the reason that if he had that intention he would have been liable on the contract as a partner, and that the only thing necessary to make him liable would have been to make the appellant acquainted with the partnership status. On the other hand it can, it seems to us, be contended with greater force that the thing which induced Hartlove to guarantee the contract of the appellant was that at that time he intended to create such relationship as would make him liable as a partner, although the written instrument had

not at that time been entered into, and therefore he was not assuming any responsibility which he would not assume by entering into the written agreement with the Gradmans.

Applying the test of interest in profits: According to the provisions of the statute, the fact that Hartlove was to receive a portion of the profits does not make a *prima facie* case of partnership, for the reason that if this share of the profits were to be received as additional compensation for his services or for the use of the money advanced by him, standing alone, it would not constitute him a partner. It is true that the agreement of alleged partnership provides that the Gradmans shall pay one-half of the profits to Hartlove as "extra compensation" for making "advances, etc."; but we are unwilling to consider this fact as conclusive of absence of partnership, when the whole agreement and the circumstances are considered, but rather as language inserted in the agreement for the purpose of escaping liability as a partner, even though all other elements of a partnership existed. Putting the proposition another way, supposing this provision of the contract, to wit, that one-half of the profits should be paid as compensation, were omitted, there would be little room left for the contention that there was no partnership in fact. Therefore, if we are to conclude against a partnership, we would do so upon the single ground that Hartlove's share of the profits was to be paid to him as extra compensation for services or money loaned; in other words, making this the conclusive test. We are of the opinion that what this language does is only to rebut what would otherwise be a *prima facie* case of partnership. and cannot be accepted as conclusive that there is no partnership. A reading of the contract of alleged partnership shows that Hartlove could exercise acts of ownership and control over the output of the cannery and the operation of the business. He had complete authority to dispose of all of the output; it was to be labeled as if it were his own product, stored in his name, and the Gradmans could not remove any of the goods without his written consent. Furthermore, Hartlove

had the right to determine how much or how little output there should be from the Melrose Cannery, by reason of the fact that he could determine the salary and wages to be paid, and if the payroll did not meet with his entire approval and satisfaction, he was not required to make any further advances under the agreement. This provision of the agreement, in effect, gave him control of who should or should not be employed at the cannery, what salary or wage they should be paid, and therefore gave him control of the amount of the output.

Hartlove, therefore, had a community of interest in the profit, in the capital employed, and in the power of administration. Gathered from the whole contract and from the circumstances, we cannot escape also the conclusion that the intention of the parties was to create a partnership. There is no testimony in the record on the part of the Gradmans as to what the intention was at the time of entering into the contract, but the record does set out the sworn petition of Philip D. Gradman, filed in the Orphans Court of Baltimore City, wherein it is alleged that a partnership did exist, and upon which petition the Gradmans were settled with by the administrator under an order of the Orphans Court as if a partnership did exist. This petition was filed after the death of Owen A. Hartlove, but very shortly thereafter and long before the institution of these proceedings, and at a time when, so far as the record discloses, Gradman had no knowledge of the insolvency of Hartlove's estate.

Considering the agreement as a whole, together with the facts leading up to and attendant upon the making of the contract, we do not agree with the decision of the lower court. Apparently its conclusion is largely dependent upon the case of *Thillman v. Benton, supra.* In our opinion, that case is distinguishable from the case at bar in important elements which prevent it from being controlling here. In that case the alleged partnership was between Benton, a druggist, and Von Hafften and Gailey, trading under the style of the Sanitary Milk Company, the two being in no wise similar or

related businesses; while here Hartlove and the Gradmans were in the same business; they were both canners. It was possible for Benton and the Sanitary Milk Company to become partners, but from the business which each had previously conducted, there were no incidents of the two businesses which would naturally bring about a combination between their owners. Here, on the contrary, nothing would be more natural than that Hartlove and the Gradmans should associate themselves as partners in the same character of business in which both had previously been engaged, and jointly operate the canning and marketing of the products of the Melrose Cannery for the season of 1925. In the Benton case there was an advance of two thousand dollars made by Benton to the Sanitary Milk Company for the period of one year, to be repaid at the expiration of that time, and for the use of the money advanced Benton was to receive a sum equal to one-third of the profits. He was not given, nor did he exercise, any dominion or control over the operation of the business. In this case Hartlove agreed to furnish, upon request, whatever funds were necessary to pay the expenses of the canning enterprise at Melrose. All of the output of the Melrose Cannery was to be labeled under the name of the Hartlove Packing Company; Hartlove was given the sole authority to dispose of the whole pack; and, in addition, by the terms of the agreement, he had the right and authority to fix the compensation or wage of all persons working at the factory. In other words, Hartlove, by virtue of the agreement, had a community interest in the disposition of the product and the operation of the business, none of which Benton enjoyed under the terms of the agreement in that case. These are important, and in our opinion, controlling differences between the two cases. In the *Benton* case the agreement and all attendant circumstances showed the existence of the relationship of debtor and creditor; while in this case the agreement and surrounding facts show the creation of the status of a partnership. In the operation of the business herein considered there were two principal things

to be done, upon the successful doing of which a profit depended: First, the manufacture of the article to be sold, and, second, the selling or marketing thereof. Under this agreement, one of the alleged partners, Gradman & Brother, had to a large extent the control of the manufacture, although even in this respect Hartlove had what in the ultimate analysis was real control, under the terms of paragraph six of the agreement, which authorized and empowered him to fix the wages of the employees at the cannery, and if not satisfactory, to refuse the furnishing of any further capital; while Hartlove, the other alleged partner, had complete and unhampered control of the disposition of the product, it being stored in his name as soon as packed, labeled as his goods. We think that these facts are sufficient to show that Hartlove had a proprietary interest in the partnership and its assets. He furnished all the money necessary for the conduct of the business, had partial control of its manufacturing operation, full control of the sale of its output, was entitled to one-half of the net profits, and must be, under these conditions, held to be a partner, in spite of the fact that the agreement stipulated that one-half of the profits which Hartlove was to receive should be as extra compensation for the advancements made. In *Mechem, Elements of Partnership* (2nd Ed.), p. 70, the author says: "Care must therefore be taken to discriminate between the cases of an alleged loan, with a share of the profits by way of interest, and a real partnership disguised as a loan; for if it appears that the transaction is a mere device to obtain the advantages of a partnership, without the responsibilities, it will be held to be a partnership, whatever the parties may have called it. The interest is usually to be found, according to later cases, in the powers of control of the alleged lender: Has he any voice or part in controlling the management of the business as a principal therein? Has he, by virtue of the arrangement, such an interest in the business that he can be regarded both as principal and agent for the others?"

It is suggested in the brief of the appellee that the con-

tract upon which the appellant based its petition was with P. D. Gradman & Brother, while the contract of alleged partnership was between Hartlove and P. D. Gradman & Company, and that therefore we are dealing with two separate and distinct parties. In view of the provisions of the stipulation in the record, that P. D. Gradman and I. J. Gradman constituted the firm of P. D. Gradman & Brother when the contract was made with the appellant, and P. D. Gradman and I. J. Gradman formed the firm of P. D. Gradman & Company when the agreement was made with Hartlove, we do not consider this contention one of substance.

It follows from what we have said that Owen A. Hartlove was a partner of P. D. Gradman & Brother, and the lower court erred in passing its decree dismissing the petition of the appellants.

> *Decree reversed, and case remanded for further proceedings in accordance with this opinion, with costs to the appellant.*