(Decided January 5th, 1897.)

---

EDWIN W. CONNAR AND WIFE *vs.* AMANDA A. LEACH—AMANDA A. LEACH, BY NEXT FRIEND, ETC., *vs.* EDWIN W. CONNAR AND WIFE.

*Cancellation of Voluntary Conveyance by Married Woman Obtained by Fraud—Laches—Parol Gift by Husband to Wife of Profits of Business—Evidence—Estoppel.*

Plaintiff, a married woman, made a voluntary conveyance of certain property owned by her directly to her husband. This deed was consequently void. Subsequently she was induced by the fraud of her husband to unite with him in conveying the same property directly to a third party, without consideration, and the property was by this party conveyed to the defendant, who was the daughter of the husband by a former marriage. *Held,* that the plaintiff was not estopped by her first deed and that the conveyance should be vacated and the property reconveyed to plaintiff.

The bill in this case was not filed by plaintiff until two years after her discovery of the fraud of her husband, with whom she was still living. *Held,* that she was not guilty of such laches as to prevent her from demanding relief.

Plaintiff also alleged that her husband bought certain other property with money belonging to her, but placed the title to the same in the name of his daughter, reserving a life interest in himself. The only evidence offered as to the ownership of the money was that she assisted him in carrying on his business and that he had said that she might make all she could out of it. *Held,* that since the evidence was not of that satisfactory character requisite in a case where a wife claims the profits of her husband's business by a parol transfer, the plaintiff is not entitled to a conveyance of the property purchased with such funds.

Two appeals from the Circuit Court of Baltimore City (HARLAN, C. J.); one by Connar and wife from a decree declaring the plaintiff, Leach, to be entitled to conveyances of two pieces of property mentioned in the proceedings; and the other by Amanda A. Leach from an order of Court overruling plaintiff's exceptions to evidence, etc.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER and BOYD, JJ.

*William Reynolds* and *Paul M. Burnett* for Connar and wife.

*John T. Mason, R.,* for Amanda A. Leach.

FOWLER, J., delivered the opinion of the Court.

The plaintiff, who is a married woman, filed the bill in this case for the purpose of setting aside certain deeds by which several valuable pieces of real estate, located respectively on Sarah Ann and East Baltimore streets, in the city of Baltimore, were conveyed by her husband to one of the defendants, who is claimed to be a daughter by a former wife. The plaintiff and the two defendants, the daughter just alluded to and her husband, who alone among the defendants appear to have any substantial interest in defeating the claims set up in the bill, have all appealed—the plaintiff appealing from an order overruling certain of her exceptions to testimony and sustaining certain of the defendants' exceptions to testimony, and the defendants from the decree of the Court below by which the deeds in question were set aside and a trustee appointed to convey to the plaintiff the property we have mentioned. The decree below having been in favor of the plaintiff, we shall consider only the questions presented by the defendants' appeal.

The facts disclosed by this record are of such a character that a Court of Equity should hesitate to give its aid in furtherance of the schemes of the defendant William Leach, who, according to his own testimony, has no right to ask it.

We forbear to comment upon his and other testimony in the record, which, to say the least, does not commend him to the favorable consideration of a " Court of conscience." But in order to get an intelligent comprehension of the grounds of the plaintiffs' pretensions it will be necessary to recite some of the testimony.

It appears that the plaintiff married William Leach in 1863 and that in the year 1865 she became possessed of the leasehold property on Sarah Ann street. On the 2nd March, 1871, she conveyed the leasehold property to her husband " in consideration of love and affection," but that being a deed directly from the wife to her husband it is conceded to be void. We find no evidence that she was not the real and *bona fide* owner of this property, and, therefore, unless she is estopped by having united with her husband in the subsequent conveyance of it to Haller, she is clearly entitled to have it re-conveyed to her, as directed by the decree. Is she estopped in the manner suggested? We think not. Haller, it is conceded, paid nothing and was used by the defendant, Leach, as a conduit through which he could pass title to the plaintiffs' property to the defendant, Mrs. Connar, who also took without any valuable consideration. Nor will it do to say, as was suggested, that the plaintiff having jointly with her husband accepted payment for the property, and having entrusted the proceeds to him for investment for her benefit, thereupon became his creditor and relinquished all claim against the property. If she were claiming as against a *bona fide* purchaser for value, or against creditors of her husband, this position might be applied, but it must be remembered that the estoppel is relied on, not by creditors or a *bona fide* purchaser, but by the daughter, who is confessedly neither. And then, too, the payment was no payment at all, but a mere pretence to give the transaction the appearance of reality and honesty. Some reliance was also placed on the defence of laches, based upon the fact that, although the plaintiff discovered her husband's fraud in 1893, she did not proceed

against him until the filing of this bill in 1895. But considering the relations of the parties and the serious nature of the charges against him in the bill, it was not only natural that she should hesitate, but it is surprising that she should, after taking time to consider, have ever instituted a proceeding reflecting so seriously upon her husband with whom she is still living. But we will not further discuss this part of the case, and in the absence of testimony to the contrary, we must conclude that the leasehold property on Sarah Ann street belonged to the plaintiff, and that under all the circumstances of the case she ought to be allowed to have it re-conveyed to her as directed by the decree.

But the plaintiff's claims to the property on East Baltimore street rest upon very different grounds, and we will now consider them.

She alleges in the bill that in the year 1885 she was possessed of a sum of money amounting to $10,000, which she owned in her own right, and as her separate property, and with which she purchased the lot on East Baltimore street. We think the uncontradicted evidence justifies us in the conclusion that it was the intention of the husband to place the title to this property in the name of his daughter for his own benefit during his life, with remainder to his daughter freed from any claim his wife might have against it, whether of dower or otherwise. The details by which this fraudulent scheme was executed we need not enter into, for that it was a fraud he not only fully admits, but declares also that his daughter and her husband were fully cognizant of his corrupt purpose. But assuming all this to be true, the question presents itself whether, under the evidence before us, she is entitled to have this property also conveyed to her. Now, it must be admitted that unless this East Baltimore street property, like that on Sarah Ann street, was really and *bona fide* hers, she is entitled to no consideration as the case now stands, for her whole claim is founded upon the allegation that it was purchased

with her own money, which she earned in Florida in the photograph view business. She has nowhere ever suggested that the property in question was her husband's and that the fraudulent conveyances might interfere with her potential right of dower, nor would she be allowed to do so while setting up the claim set out in her bill. She has elected to claim the East Baltimore street property as her own, and failing in that, her bill should be dismissed.

What, then, is the evidence upon which she relies? Her own entirely, for we are not inclined to attach any weight or importance to her husband's testimony, assuming without deciding, that it is admissible. He was and had been for years a practical photographer. He appears to have been in Florida prosecuting his business at the close of the civil war in 1865, and continued there in partnership with a Frenchman named Pieron until 1873. The plaintiff first visited her husband in Florida in 1868, but she never appears to have had any share even in conducting the business until, according to her account, in 1874, and according to her husband's testimony, sometime in 1873, when, he says, he dissolved partnership with Pieron and told the plaintiff she could have the use of all the negatives on hand, and might make all she could out of them, if she would take hold of the business, claiming that his health was poor and that he could not carry it on *by himself.* She testifies in the most general terms, without giving any satisfactory account of the manner in which she conducted the business, that she began it in 1874 and sold out in 1886, and that the result was most satisfactory, inasmuch as she made as much as $4,000 in one season. The plaintiff's husband established the business in Florida and carried it on either alone or in partnership with another from 1865 up to the time when the alleged transfer of it was made, and, according to her testimony, he is still engaged in the same business at the same place. She admits that he assisted her by taking photographic views, she not appearing to have any knowledge of the art, and when asked if

he did not put as much labor into the business as she did, she replied she did not know about that, but that she could bring a great many witnesses to prove that she did *all* the business there. But of this important fact, if it be a fact, she failed to furnish any satisfactory proof. Upon all the proof she appears only to have been aiding her husband in conducting his own business, and any evidence which we have found to the contrary is not of that satisfactory and unequivocal character which is demanded in a case in which a wife claims, as a *feme sole* trader, the profits of her husband's business by a parol transfer. *Neal* v. *Herman,* 65 Md. 474; *Poffenberger* v. *Poffenberger,* 72 Md. 325; *Manning* v. *Carruthers,* 83 Md. 1.

Looking at the whole case we can see nothing in it which appeals with much if any force to a Court of Equity, and failing to find convincing evidence that the money with which the East Baltimore street property was purchased was, in truth, the money of the plaintiff, we must refuse the prayer of the bill in reference to it.

> *Decree affirmed in part and reversed in part and cause remanded. Costs to be equally divided between the defendants, Wm. Leach, Connar and wife.*

(Decided January 5th, 1897).