## MARGARET M. COLLIER *v.* HERMAN O. COLLIER
### SAME *v.* SAME

[Nos. 14 and 26, April Term, 1943.]

*Decided June 2, 1943.*

The causes were argued before SLOAN, J. C., DELA-PLAINE, COLLINS, MARBURY, GRASON, and ADAMS, JJ.

*George B. Woelfel* for the appellant in both cases.

*Benjamin Michaelson* for the appellee in both cases.

GRASON, J., delivered the opinion of the Court.

The cases presented in records numbers 14 and 26, April Term, involve the domestic relations of the parties. Both proceedings were instituted by the wife against the husband and from the decree in each case, passed by the Circuit Court for Anne Arundel County, in equity, an appeal has been taken to this court by the wife.

The prayers of the bill in record number 14 are: (1) a divorce *a mensa et thoro;* (2) the care and custody of the two children; (3) and (4) permanent alimony

and alimony *pendente lite;* (5) for the appointment of a receiver to conduct and sell certain business alleged to be conducted as a partnership, and to sell property held by the entireties; to sell certain trucks and passenger cars, a yacht, and the proceeds of the sale to be held by the receiver until an agreement is reached to divide same, or one of the parties dies; and (6) for general relief. The bill alleged cruelty.

An answer was filed by the husband, in which he denied: (a) the alleged cruelty; (b) that his wife was a copartner with him in the business but charged that the business is his sole and separate concern.

The bill in record number 26 alleges a partnership of the business, and restates many of the matters contained in the first bill. It prays: (1) for the appointment of a receiver to collect the rent arising from real estate held as tenants by the entireties, and hold the money until death of either party and to pay it over to the survivor; (2) for the appointment of a receiver to operate the business and divide the proceeds; (3) for an accounting of the business since the 8th day of May, 1942, and (4) general relief.

An answer was filed denying that the business was operated by the husband and wife as copartners; and denying that she was entitled to the relief prayed. That by decree dated the 21st day of January, 1943 (filed January 22nd) the chancellor decreed:

"1. That prayers one, two and three of the bill of complaint for a receivership be, and the same are hereby, denied, subject to further order of court.

"2. That, under the prayer for general relief, the defendant account to the plaintiff for one-half of the net rents, income and profits from the said real estate, 270 West Street, Annapolis; the said accounting to be from the date when the plaintiff withdrew from the occupation and possession of the said premises as shown by the record of these proceedings and in No. 1992 Divorces in this court, to wit, April 3, 1942, the said accounting also to be made and returned by the defendant, in form

and substance to be approved by this court, not later than February 15, 1943.

"3. That in order to determine the fair rental value of the said premises, 270 West Street, to be used as a basis for the accounting above prescribed, testimony be taken in open court on Monday, February 1, 1943, at 10 o'clock A. M., at which hearing both parties may present testimony of witnesses competent and qualified to testify on this question of rental value, including the citation of costs and expenses properly chargeable against the said property, to the end that the net rent payable in equal shares to the plaintiff and defendant as tenants by the entireties may be determined by the court."

The record shows that the appeal in this case to this court from the decree dated January 22, 1943, was filed on February 3, 1943. The lower court was without jurisdiction to take further action in the case after the appeal was entered. On February 1, 1943, testimony was taken regarding the rental value of 270 West Street, Annapolis. On March 29, the court filed what is termed "final decree" and inasmuch as this final decree was filed after an appeal had been taken by the appellant from the decree filed January 22, 1943, it cannot be considered by this court and we will deal with the decree filed January 22, 1943.

Testimony was taken under what we may call, for brevity, the divorce bill, and the court, on the 12th day of October, 1942, decreed: "(1) that the bill of complaint be, and it is hereby, dismissed; (2) that the custody of the children, Margaret G. Collier and Gerald Collier, be, and the same is hereby, continued in the defendant, Herman O. Collier, subject to the further order of this court; and (3) that the defendant pay the costs of these proceedings."

The parties were married in Highlandtown on the 19th day of January, 1922. The wife left her husband twice before the final separation, once when the first child was born, and again shortly after the birth of an-

other child, which was twelve or thirteen years ago, and on each occasion a reconciliation was effected. From that time until about three years ago, so far as the record discloses, they lived together at least peacefully, if not happily. The husband started to work for the Pepsi-Cola Suburban Club in 1921. He was a driver salesman in the Annapolis area for the company and in 1934 the business had grown and the company decided to establish a warehouse and distributing point in Annapolis and to employ the appellee to look after the business. This offer was accepted.

He did not have any money but was assisted by the company in getting merchandise on consignment. It lent him trucks and assisted him in purchasing trucks, for seven or eight years. It extended to him the use of its offices and helped him generally. It turned over to him its entire business in that area, which was considerable. He went to Annapolis and was there a month when his wife and children joined him. The business was conducted in his name and always has been. He ordered the necessary merchandise, conferred with the company, paid the bills with checks he signed, but when he way away his wife deposited the proceeds of the business in such a way that she could draw checks. Nevertheless, the real bank account was in his name and was to go, at death, to his wife and she could not draw checks against it.

He bought the property where the business was conducted on West Street and took title in his name and his wife's. This seems to be a valuable piece of property and is said to be worth $25,000. It is subject to a mortgage of $4,500. On October 15, 1938, he purchased a home, taking title in himself and wife as tenants by the entireties, and the house is said to be worth $25,000. This property is subject to a mortgage of $11,000. He acquired a yacht and took title to it in himself and wife. Several trucks were acquired for the business, the titles to which were taken solely in his name, and this business was conducted successfully.

The home expenses, which amounted to about $70 a week, and money for other things that the wife wanted, were taken out of the proceeds of the business. For four years these parties got along well at Annapolis. Their daughter was sent to Mount Saint Agnes Junior School, in Baltimore, and their son is now attending Randolph-Macon College.

Trouble started because of the wife's desire to share as a partner with her husband in this business, which resulted in frequent fussing and quarreling. The wife testifies that she worked regularly at the business, which is not corroborated, and her husband states that if an average were taken over the years she would not have spent over an hour a day at the office. She had no business experience, except, as she says, that before they went to Annapolis she would sometimes be with her husband when he was soliciting business and that she helped him by joining in the solicitation and being nice to prospective customers. In 1937 she persuaded her husband to file an income tax return as partners and this they have done for some three or four years. The wife's claim as a partner in her husband's business is based upon the following facts: (a) that the husband acquired property as tenants by the entireties, (b) that he placed his bank account so that after he died it would go to his wife, (c) that he purchased a yacht in the joint names of himself and his wife, and (e) that she worked hard at the business and strove for its success. (This is not corroborated and is denied by the husband and it would seem that if she did work so hard at the business it would be a very easy thing for her to produce evidence in corroboration.) (f) That income tax returns for three or four years were made in the name of herself and husband as copartners. The explanation which the husband offers for filing the income tax returns in partnership form is that he did this to keep peace; that his wife fussed and fussed and fussed. That she did quarrel in the home is testified to by the daughter, twenty years old.

These are the main and controlling facts to sustain the wife's claim that she was a partner with her husband in business. The burden of proof was upon the wife as plaintiff to prove that she was a partner. *National Building Supply Co. v. Gosnell,* 116 Md. 640, 82 A. 557; *Houston v. Swartwout,* 161 Md. 279, 284, 157 A. 193.

In considering this case we need not stop to determine the rights of third parties, as none are involved. The records here present a case of a wife claiming to be a partner of her husband and they alone are affected. The main test of whether or not a partnership exists is the intention of the parties to create a partnership. "A partnership can only exist in pursuance of an expressed or implied agreement to which the minds of the parties have assented. The intention or even belief of one party alone, cannot create a partnership without the assent of the others." *Phillips v. Phillips,* 49 Freeman (Ill.), 437, 439.

"The particular test as to the existence of a partnership relation which is most widely accepted today, and which is applicable especially as between the parties themselves, irrespective of the rights of third persons, is that a partnership is formed and exists only when it is the intention of the parties that they should be partners. Partnership contracts, like other contracts, are governed by the intention of the parties. * * * This intent may be manifest by the terms of their agreement, the conduct of the parties to each other under it, or by the circumstances generally surrounding the transaction." *Southern Can Co. v. Sayler,* 152 Md. 303, 314, 315, 136 A. 624, 628; *Townsend v. L. J. Appel Sons, Inc.,* 164 Md. 255, 164 A. 679.

It is admitted that there was no written partnership agreement entered into by the husband and wife and she bases her claim largely on the fact that she diligently worked at the business. "The services of the wife to which the husband is entitled include those rendered by the wife in performance of her household and domestic duties, as well as those rendered by her while assist-

ing the husband in his business." 30 *C. J., Husband and Wife*, Sec. 36, page 521. With this statement of the law it would require evidence of a satisfactory and unequivocal nature, in addition to a wife's services, to warrant a court in holding that she is a partner with the husband in the business conducted. *Connar v. Leach*, 84 Md. 571, 576, 36 A. 591, 592. In this case, although from the wife's testimony she might have called people to testify in corroboration of her statements, yet most of her case is based upon her testimony alone. Everything she did in the business is so construed by her as to give it a meaning to strengthen her claim as a partner. We think it may be said with full truth, that a wife who helps her husband in business is not treated by him in the way that he would treat an employee, and if she is designing she is in a position to maneuver and to give her every action a meaning to accomplish her purpose. In the case of *Connar v. Leach, supra,* a wife asserted that her husband bought property with her money. Judge Fowler said: "Upon all the proof, she appears only to have been aiding her husband in conducting his own business, and any evidence which we have found to the contrary is not of that satisfactory and unequivocal character which is demanded in a case in which a wife claims, as a *feme* sole trader, the profits of her husband's business by a *parol* transfer."

The wife lays stress on the fact that income tax returns were made in partnership form. The husband explains this by saying that he did it to keep peace, and we do not think that this evidence alone or taken in connection with the testimony offered by the appellant in record No. 14 as well as in record No. 26 is sufficient to show that this business was ever held or conducted as a partnership concern. We, therefore, hold that this business is not a partnership affair, but it is the sole business and concern of the husband.

The wife prays that a receiver be appointed to take over the real estate and hold it under the jurisdiction of the court. There have been cases involving property

held by the entireties where, because of their peculiar circumstances, this court has granted relief. In the Masterman case, *Masterman v. Masterman,* 129 Md. 167, 98 A. 537, the husband left the wife. The house, owned by the entireties, in which the wife lived, burned. The wife wanted the insurance money to be used in repairing the house. She filed her bill and prayed for the appointment of a receiver, so as to apply the insurance money to making the repairs. The husband demurred to this bill, which was overruled by the lower court and affirmed by this court. In the case of *Brell v. Brell,* 143 Md., at page 443, 122 A. 635, the proceeds derived from the sale of a farm and mortgage held by a husband and wife as tenants by the entireties were involved. It was held that a trustee should be appointed to receive such fund and invest it under the order of the court, one-half of the net income therefrom to be paid to each party until the death of one of them and the corpus to be paid to the survivor, unless sooner distributed by agreement of the parties. In *Annapolis Banking & Trust Co. v. Neilson,* 164 Md. 8, 164 A. 157, the court said: "While, through the fiction of unity of husband and wife, tenancy by the entireties has been preserved intact, the tenants have, as a result of the statutes freeing the wife's property from her husband's control, rights in the common property *inter sese,* which can be enforced only on the assumption that the husband and wife are two persons." In the case of *Whitelock v. Whitelock,* 156 Md. 115, page 116, 143 A. 712, 715, there was property sold by the husband and a purchase money mortgage taken in the name of the husband and wife as tenants by the entitreties. Judge Sloan in that case said: "At common law, the appellant, by virtue of his control of the wife's property, would have been entitled to all of the income. As affected by statute, however, from time to time, the control of the husband over the wife's property has changed, until now, under the Married Women's Property Acts, * * * in this State the wife shares equally with the husband in the income from a tenancy by the entireties."

From these cases it may be deduced as a general rule that courts of equity will assume jurisdiction to protect the interest of one or the other spouse in property held as tenants by the entireties. Each case will depend upon its facts and upon its appeal to the conscience of the chancellor. These cases are not like the case of *Hall v. Hall*, 180 Md. 353, 24 A.2d, page 415, for the question in that case was whether, upon a decree of absolute divorce, the court would restore to the innocent party full title to property held before the decree as tenants by the entireties, which was purchased by money of the innocent party. The court refused so to do and applied the general rule, "that courts of equity in cases for divorce, have no power, unless expressly conferred by statute, to transfer the property of either spouse to the other, or otherwise to dispose of it."

With regard to the property used as a home for this family, for the reasons hereinafter set forth, the wife is not deprived of its use, but her own conduct and turbulent behavior has brought about a separation.

With reference to the business property, which is held by the entireties, the court comes to the conclusion, for the reasons set out in this opinion, that no relief should be given the wife in so far as the business property is concerned, for if she corrects her behavior and returns to her home she will receive the care and attention which married women receive from their husbands who carry on successful and profitable business. And it would seem to be anomalous in a case where a husband conducts his business in a property which he has bought and paid for and taken title to in the name of himself and wife as tenants by the entireties, to be required to pay rent for such property to the wife, as a result of a situation which the wife has caused. Such a case does not appeal to the conscience of the court.

In the last three years these parties lived together, in the language of the wife: "We had two very good fights and others not worth talking about." On one of these occasions she says that her husband "slapped me and

was awful nasty, and he has done it in front of our men in the office." That he "pushed me around and as much as pushed me out of the office" in front of a Catholic priest, and yet none of these men who saw this conduct, nor the Catholic priest, were called by her. On one occasion the officers came to the house, and they were not called as witnesses.

In February, 1942, the date of one of the "very good fights," in which she said her husband beat her (which is not corroborated at all), her husband says that she stabbed him in the back with a fork and scratched his face fearfully, so that he could not appear among his business associates and went to Florida and remained there until his face healed. The daughter testifies that the mother did scratch her father's face and that her mother attacked him and he did not attack her.

On the night of April 3, or early morning of April 4, 1942, was the second "very good fight." The wife states that she had worked very hard that day and was tired, yet, according to her own testimony, she waited until 2.30 o'clock in the morning when her husband appeared. An argument ensued. It started in the kitchenette and continued in the dining room. The daughter and son, hearing the argument, came downstairs. The husband said he told his wife that this was one occasion he was not going to be scratched. He stated that she attacked, and the daughter corroborates him. According to the evidence of the husband and daughter, the appellant was the aggressor. This fight is estimated to have lasted for three quarters of an hour. The children tried to stop her, but from the evidence it is plain that she threw them off and returned to the fray. Finally she got to the telephone and called her mother in Baltimore and the mother of the appellant testified that her daughter told her over the telephone that the children were holding her while her husband was beating her. This is denied by the appellee and his daughter.

The burden of proof is upon her to show that she was the victim of her husband's attacks. She not only fails

in this, but the daughter corroborates the husband's testimony that her mother attacked repeatedly. The appellee testifies that in the last three years his wife has, upon eight or nine occasions, attacked him and clawed and mutilated his face. On these occasions he held her hands until she became quiet. It is plain that all of these outbursts were the result of the wife's desire to dominate her husband in his business affairs. The appellant states that the husband was intoxicated and that he was neglecting his business because of his intemperate habits. There is not a bit of corroboration of this testimony and it would be strange that the husband could meet with the success that he did in his business and be thought of as he is by his company, if his habits were as testified to by his wife. The wife testified that she engaged in intoxicants.

The appellant went to her mother's home in Baltimore City on the morning of April 4, stayed there two days, and was then taken to the Maryland General Hospital. No physician testified in the case, but the record of the hospital was offered in evidence. She was there from April 6 until April 18, 1942, when she was discharged. The record shows that she was bruised and scratched, but the X-ray shows no fractures. She went home from the hospital, accompanied by a nurse, who was later discharged. She said that she was afraid to go home without a nurse. The husband did not go to see her in the hospital because he was told that she did not want him to come. She stayed home about two weeks, when she left. This was the final separation. Naturally these two weeks were not happy ones for anyone in that family. The daughter had gone to Baltimore to see her mother at the hospital and had been ordered out of the room by her mother.

The appellant further testified, on cross-examination, that when her husband came in at 2.30 on the morning of April 4 that he struck her without any provocation, but she said that she scratched him and in answer to the question: "Dug your nails right deep?" answered:

"Yes, and I went to the hospital." She denied that she struck him in the back with a fork in February and said: "When we fight, we fight with our bare hands, both of us do." Referring to the final separation, appellant was asked: "What was there in your husband's attitude that caused you to leave at that particular time?" She answered: "Because he was not taking care of the business as I thought he should. He would leave at 9 until 6 and a perfect stranger, Mr. Dickhoff, a man only been in the business six or seven weeks, never knew what a case of soda cost from a quart of milk, in charge, and I could not stand that and I thought was time to do something." She left because of Mr. Dickhoff's connection with the business and the treatment by her children and the cruelty of Mr. Collier.

We deprecate the treatment of the wife by the husband on the night of April 3, 1942, but, nevertheless, a wife who has acted like the plaintiff in this case did towards her husband, his home and his business, does not occupy the position of a spouse who has been ill-treated without any cause or provocation. In judging the husband's conduct we must be governed by "what naturally and probably a person with the imperfections common to humanity would be prompted to exercise." *Bishop, Marriage, Divorce and Separation*, 1891 Ed., Vol. 1, Sec. 1646. "The general rule is that a divorce will not be granted on the grounds of cruelty when the cruelty was provoked by the misconduct of complainant." 27 *C. J. S., Divorce,* Sec. 56, page 599; *Payne v. Payne,* 178 Md. 681, 16 A. 2d 165; *Clatterbuck v. Clatterbuck,* 150 Md. 648, 133 A. 316.

In *Payne v. Payne, supra* [178 Md. 681, 16 A. 2d 166], Judge Sloan said: "Where the parties are equally guilty, the courts in this State are reluctant to give either such advantage as would entitle the other of them to a divorce," quoting *McClees v. McClees,* 160 Md. 115, 152 A. 901.

In the case of *Bonwit v. Bonwit,* 169 Md. 189, 181 A. 237, 242, Judge Johnson quoted from *Coles v. Coles,* 32

N. J. Eq. 547, as follows: "Had her own conduct been different from what it was, had she herself been free from blame, I would not hesitate to pronounce the desired decree for divorce, but I cannot shut my eyes to the fact that her conduct has been unforgiving and unforbearing, calculated to exasperate rather than to conciliate; that she seems to have been unwilling to conform to her husband's wishes in regard to his household affairs, and to discharge her duties under the circumstances in which she was placed." *Singewald v. Singewald,* 165 Md. 136, 146, 166 A. 441; *McKane v. McKane,* 152 Md. 515, 520, 137 A. 288.

We regret the position in which the wife now finds herself. She has alienated her husband, her daughter and probably her son, but she has brought all of this on by her own conduct. Her remedy is to change her behavior and thereby be restored to her home and the affection of her husband and her children.

> *The decree in Record No. 14 is affirmed and inasmuch as appellee did not appeal from the decree filed January 22, 1943, in Record No. 26, that decree also will be affirmed; the appellee to pay costs in both cases.*