THOMAS J. SMITH *v.* ESTHER ANDERSON SMITH

[No. 163, October Term, 1946.]

Decided June 12, 1947.

The cause was argued before DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Robert W. McCullough,* with whom was *Ignatius J. Keane* on the brief, for the appellant.

*Walter L. Greene* and *Cornelius Whalin,* with whom were *Green, Whalin, McLeish, Babcock & Bell* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

On November 12, 1946, the appellee here, Esther Anderson Smith, filed a bill of complaint in the Circuit Court for Prince George's County against her husband, Thomas J. Smith, appellant here, Ralph Camp, and Hyman Koretz alleging that she and Thomas J. Smith were married on March 14, 1941, and lived together until the 12th day of October, 1946, when the appellant told the appellee to leave the home of the parties, and the appellee has since resided at the home of her sister. After the marriage the appellee was employed by Kaywood Gardens as resident manager of that apartment house from March, 1943, until February, 1946, at a salary of $150 per month, together with the

use of an apartment valued at $75 per month. She alleged that her compensation was used by the parties for living expenses, the appellant being employed by the United States Government in the Department of Federal Public Housing as a maintenance engineer. At the suggestion of the appellant, in 1945 the appellant and the appellee made plans to enter into a tavern business and they purchased the lease of a certain tavern at Bladensburg, Maryland. Pursuant to said purchase she alleged a definite understanding and agreement by the appellee and the appellant that this enterprise was to be owned by them as a partnership.

The appellee claimed that she devoted her efforts to the preparation and opening of the tavern business and in February, 1946, resigned her employment at Kaywood Gardens and devoted her entire time to the promotion of the tavern business. She further alleged that this business, known as Smith's Tavern, was purchased by the appellant and the appellee from funds accumulated by them as husband and wife, the funds of the business were deposited in a joint bank account in their joint names, withdrawals were made from this account for the payment of business and partnership expenses, and for family expenses. She stated that she has at all times held herself to be an equal partner and owner of an equal share in the business and the appellant has also regarded her as a partner. She alleged that on the 14th day of October, 1946, the appellant contracted with the other defendants, Ralph Camp and Hyman Koretz, whereby he agreed to sell and dispose of the business known as Smith's Tavern for the sum of $32,000, payable $16,000 in cash and the balance in monthly installments of $500 each.

She complained that she had been excluded from the home and the business by the appellant and that the contract of sale hereinbefore mentioned was signed by the appellant only, and he dealt with the purchasers as if the Smith's Tavern business was his exclusive property, denying to the appellee any interest therein. She

further alleged that the appellant had threatened to enter into a conspiracy with a certain real estate agent to claim a debt in the amount of $15,000 against the property in order that the appellee would be deprived of her interest in the business. She alleged that she had no objection to the sale, either as to the parties or as to the price, but that the appellant refused to admit that she had any interest in the proceeds of the sale, or in the other assets held by them jointly as partners, and that she was in grave danger of the loss of money and property.

She prayed that the appellant be directed to account to her for all income and assets of the partnership subsequent to October 12, 1946; that the partnership be dissolved and after payment of all just debts and expenses the net proceeds be divided in equal shares between the respective partners; that receivers be appointed to make the sale and to take and hold the proceeds of the sale of Smith's Tavern and other assets and distribute the proceeds under the direction of the Court; and for other and further relief. After answer filed, in which the appellant denied that the appellee had any interest in the business of Smith's Tavern and after the taking of testimony, a decree was signed by the Chancellor, decreeing that the partnership existed as alleged in the bill of complaint between the appellant and the appellee, and that the business known as Smith's Tavern was in effect a partnership between the appellant and the appellee. He ordered that the partnership be dissolved, and appointed a special auditor to whom he referred the proceedings in the case for the purpose of stating the account between the respective partners, and to make up appropriate findings thereon, and unless the time be extended by further order of the Court that the special auditor should within a period of sixty days make his findings and report to the Court. He ordered that the appellant, Thomas J. Smith, pay the costs in the case, to be paid out of the partnership. In the opinion in this case the Chancellor made certain directions to the auditor as to the statement of the partnership account and

particularly as to the determination of the capital investment of each person. From the decree the appellant appeals to this Court.

The testimony shows that the appellee had been married before and had a son. At the time of her marriage to the appellant she had a rather resposible position with a department store in Washington. After the marriage she became manager of a large apartment house in Washington and part of her compensation was a free apartment where she and her husband lived. She testified that she used all of her salary for household expenses and if she needed more she would get this from her husband. Mr. Smith was then employed by the United States Government at a salary of $2,300 per year. Later on, while still employed by the government, he entered into a business partnership with his sister and later with other persons.

The appellee claimed that from the time of their mariage they intended ultimately to go into business and were saving money for that purpose. The appellant denied this. Later the husband was moved by the government to a position in Ohio. The appellee gave up her position and went with him to Ohio and obtained employment there. Later they came back to Maryland where she obtained her position as manager of Kaywood Gardens as hereinbefore set out in the bill of complaint. The husband then earned a salary of $5,000 a year.

At this time Mr. Smith decided to go into a particular tavern business. He leased a premises known in these proceedings as "Smith's Tavern" and later paid $3,000 for the re-assignment of the sub-lease which he had previously given on the property. Mrs. Smith claimed that she entered into some of these negotiations. However, the lease was assigned to the appellant alone. The liquor license for the tavern was issued in the individual name of Thomas J. Smith. After the tavern had been opened about one month the appellee resigned her position, worth about $225 a month, and took up the management of the tavern. She said that she was willing to do this

because she considered that she was a half owner in the business. Mr. Smith continued his employment with the government and whatever time he spent in the management of the tavern business was after working hours. The appellant consulted a Mr. Callow, a tax consultant, about making returns for social security taxes, income taxes, and other returns required by law. He claimed his original intention was that his wife should receive a salary of $50 a week from the business. If this had occurred it would have been necessary for Mr. Smith to report her as an employee on payroll deductions and other taxes required for social security and income tax liability. There was a conference between Mr. and Mrs. Smith and the tax consultant, in which it was definitely determined by Mr. Smith that the business of Smith's Tavern would be reported as a partnership for income tax and social security tax purposes and on these returns it was stated that the business was a partnership and the partners were the appellant and the appellee. Mrs. Smith testified that they agreed to share equally in the profits of the business.

An insurance agent, a Mr. Hudson, discussed with the appellant and the appellee, together, the matter of insurance. He wrote three or four policies for different types of liability, which included among others burglary insurance and public liability insurance and delivered these policies to the appellant and the appellee. In each of these policies the business was treated as a partnership with respect to at least two of the policies and in the others it was treated as jointly owned by Mr. and Mrs. Smith. The appellant claimed that he did not know in what name or names these policies were written. However, it appears from the testimony that there were two losses due to burglary and the checks for the losses were made payable to the appellant and the appellee. These checks were delivered to the appellant. He admitted that he endorsed both his name and that of his wife on the checks. The money from the tavern was kept in a joint bank account in the name of Smith's

Tavern, checks to be drawn by Thomas J. Smith or Esther Anderson Smith. Both the appellant and the appellee signed notes borrowing money used in the business.

The parties to this suit lived together until October 12, 1946. The appellee claimed that before that date Mr. Smith had an extension put on their apartment telephone into the next apartment for the use of gambling by others, and she disapproved of this and told him if he did not take it out she would have to leave. He would not do this and consequently she left.

There is much dispute between the parties as to the actual cash which the appellee put in the business. It is claimed by the appellant that each one took out of the cash drawer whatever money they needed and were supposed to put in slips for the amounts taken. The appellant claimed that it was necessary for him to later employ a Mr. Donovan as manager because Mrs. Smith was intoxicated so much of the time. This is denied by her, by Donovan, and by other employees at the tavern, who testified that they had never seen Mrs. Smith intoxicated, that she worked long hours, and acted as a lady. One of the waitresses testified that she had been there for three months and the appellant never did any work around the tavern and all he did was to eat, drink, sleep and "cuss."

This Court is of opinion that the chancellor was correct in passing the decree from which the appeal was taken.

The insurance policies carried in the partnership name, the return of income tax withheld on wages, the employer's tax return under the Federal Insurance Contributions Act, 26 U. S. C. A., Int. Rev. Code, Sec. 1400 *et seq.*, the employer's return to the State of Maryland Unemployment Compensation Fund, and the bank accounts carried in the joint names, all at the direction of the husband, together with other direct testimony in the case, were sufficient to justify the Chancellor in passing the decree, here attacked.

8

The appellant relies strongly on the case of *Collier v. Collier,* 182 Md. 82, 32 A. 2d 469, 471, where this Court held that the wife was not a partner in her husband's business. In that case the wife relied on the following facts to prove the partnership: "(a) that the husband acquired property as tenants by the entireties, (b) that he placed his bank account so that after he died it would go to his wife, (c) that he purchased a yacht in the joint names of himself and his wife, and (e) that she worked hard at the business and strove for its success." This Court particularly found that contention (e) was not corroborated, that it was denied by the husband and that, if she had worked hard at the business, it would have been easy for her to produce evidence in corroboration. She also contended "(f) That income tax returns for three or four years were made in the name of herself and husband as co-partners." The husband explained the fact that he made this joint return in order to keep peace in the family and "that his wife fussed and fussed and fussed." The daughter testified that her mother did quarrel in the home. The facts in the instant case are very different from those in the case of *Collier v. Collier, supra,* for here it is very evident that the wife not only worked strenuously in the business, but had worked at separate employment both before and after her marriage to the appellant and had given up a lucrative position to manage this business. On the other hand the husband held a full-time government position and whatever work he did at the tavern was after business hours. In the instant case there is no contention that the wife forced the husband to make the tax returns on a partnership form. He admits that he readily agreed to the suggestions of the accountant that this be done. In passing it might be well to state that this Court had no intention that the case of *Collier v. Collier, supra,* established any right in married people to defraud the government in claiming a partnership where one did not exist.

The appellant cites the case of *Beard v. Beard,* 185 Md. 178, 44 A. 2d 469. That case is more of an authority for the appellee than for the appellant.

The appellant also cites the case of *John Bird Company v. Hurley,* 87 Me. 579, 33 A. 164, 165. It was said in that case, "The law cherishes the marriage relation. It recognizes the deep interest the wife should and does take in the business carried on by the head of the family. It regards and commends this interest as arising naturally from marital affection and duty rather than from any partnership in the business. This wifely interest is essential to the completeness of the marriage relation." The facts in the instant case go far beyond a mere interest which the wife took in her husband's business. Furthermore to determine how far the case quoted would be applicable in Maryland, it would be necessary to give due consideration to the fact that the Married Women's Act of 1898 was amended in 1900 so as expressly to provide that: "a married woman may contract with her husband and may form a copartnership with her husband or with any other person or persons in the same manner as if she were a *feme sole* * * *." Code, 1939, Art. 45, Sec. 20.

The cases of *National Building Supply Company v. Gosnell,* 116 Md. 640, 82 A. 557, and *Holmes v. Vigue,* 133 Me. 50, 173 A. 816, 818, cited by the appellant, are not in point here.

As was said by this Court in the case of *Collier v. Collier, supra,* 182 Md. at page 88, 32 A. 2d. at page 472, " 'The particular test as to the existence of a partnership relation which is most widely accepted today, and which is applicable especially as between the parties themselves, irrespective of the rights of third persons, is that a partnership is formed and exists only when it is the intention of the parties that they should be partners. Partnership contracts, like other contracts, are governed by the intention of the parties. * * * This intent may be manifest by the terms of their agreement, the conduct of the parties to each other under it, or by the circumstances generally surrounding the transaction.' *Southern Can Co. v. Sayler,* 152 Md. 303, 314, 315, 136 A. 624, 628; *Townsend v. L. J. Appel Sons, Inc.,* 164 Md. 255, 164 A.

679." This principle was re-affirmed in the case of *Fowler v. Loughlin*, 183 Md. 48, at page 53, 36 A. 2d. 671.

It has been frequently stated by this Court that the existence of a partnership may be established either by direct evidence or by evidence of facts corroborating the existence of the partnership. *Abbott v. Hibbitts*, 142 Md. 7, 15, 119 A. 650; *McBriety v. Phillips*, 180 Md. 569, 575, 26 A. 2d 400. In the instant case we have both direct testimony and strong corroborating facts.

In this case the appellant by his deliberate and contemplated acts cannot on one hand claim the benefit of a partnership business for the purpose of tax reduction, and on the other hand deny a partnership business for the purpose of depriving his wife of her interests therein. As hereinbefore set forth, a partnership exists only when the parties intend that there should be a partnership. There was direct testimony of the wife that a partnership was intended in this case. There is direct testimony that the business was held out to the public as a partnership. The facts in this case amply corroborate the wife's testimony that it was the intention of the parties to form a partnership, as expressed to the tax consultant and as found by the chancellor. The decree will be affirmed.

*Decree affirmed, with costs.*