# FRANCIS H. GOSMAN *v.* THELMA R. GOSMAN

[No. 18, September Term, 1973.]

*Decided August 28, 1973.*

68

The cause was argued before MOYLAN, POWERS and CARTER, JJ.

*Audrey E. Melbourne* and *Howard E. Goldman,* with whom were *Francis X. Walsh, Jr.,* and *Melbourne & Goldman* on the brief, for appellant and cross-appellee Francis H. Gosman.

*Stanley Klavan* and *Paul H. Mannes* for appellee and cross-appellant Thelma R. Gosman.

POWERS, J., delivered the opinion of the Court.

Francis H. Gosman and his wife, Thelma R. Gosman, were married in 1945 and lived together in their home at Beltsville in Prince George's County until Mrs. Gosman left the home on 10 December 1971. Of their three children only the fourteen year old daughter, Julie, still lived at home. In March, 1972, Mr. Gosman filed in the Circuit Court for Prince George's County a bill of complaint alleging that his wife had deserted him and praying for a limited divorce and custody of their minor child. He alleged in the complaint that he was the sole owner and operator of a retail grocery, freezer meat, restaurant, lounge, and music recording business known as Dawnrose, in Prince George's County. In addition, he asked that his wife be required to return to him the sum of $48,000.00 which she withdrew from the business bank account at the time she left the family home.

With her responsive pleading to the husband's complaint,

the wife filed a counter complaint for an absolute divorce, alleging that the husband had in November and December 1971 committed adulteries which she had not condoned, as well as numerous previous adulteries which she had condoned. She alleged that "the parties jointly own property consisting of real estate, businesses, corporate stocks, household furnishings, automobiles, and other personal property", and specifically alleged that she was a joint owner with her husband of a "combination night club, grocery store, liquor store and restaurant", and that she was unemployed. In her counter complaint the wife prayed for an absolute divorce, alimony, custody of and support for the minor child, counsel fees and money to prosecute her suit, and prayed that the court determine all property rights of the parties in personal property.

Shortly after the filing of these initial pleadings, the parties entered into a stipulation, without prejudice to the rights of either, that the wife should retain the sum of $24,000.00 and return the sum of $24,000.00 to the husband. The evidence indicates that she complied.

Following extensive discovery on behalf of both parties, the case was heard before Judge James F. Couch, Jr. in the Circuit Court for Prince George's County on 26 and 27 September 1972. Counsel thereafter filed written arguments on the issues involved. On 10 November 1972 Judge Couch filed an opinion, and signed and filed a final decree.

In the final decree the complaint of the husband for a limited divorce was dismissed, the wife was granted an absolute divorce against the husband on the ground of adultery; the wife was awarded an interest in Dawnrose in a share equal to twenty-five percent of its fair market value on December 10, 1971, and a share equal to twenty-five percent of the amount of the business checking account on December 10, 1971; the wife was awarded ownership of one half of the furnishings of the family residence; the wife was awarded sole ownership of a 1971 Mark IV Lincoln Continental automobile which was titled in both names; the husband was ordered to pay to the wife the sum of $700.00 a month as alimony; the wife was awarded custody of the

minor child and the husband was ordered to pay the sum of $550.00 a month for support and maintenance of the child; and the husband was ordered to pay to the wife the sum of $1,000.00 for the cost of the litigation, in addition to the sum of $1,240.00 for the cost of retaining detectives.

The husband took an appeal from the decree. In his brief and argument here he contends:

1. The evidence was not sufficient to support the finding that he committed adultery in November and December 1971.

2. That even if the evidence was sufficient to prove adultery, the evidence also showed that it was condoned by the wife.

3. That the evidence did not justify the finding that there was a business partnership between the parties.

4. That the evidence did not justify the award of alimony, child support, counsel fees and detectives fees.

The wife filed a cross appeal from that part of the decree which awarded her a 25% rather than a 50% interest in the business known as Dawnrose, after finding that she was a partner in the business. She further asserts that even if the finding of partnership was in error, she was entitled to a 50% share in any event because the property was held as tenants by the entireties prior to severance of the tenancy by the divorce.

We note that neither party appeals from those parts of the decree which gave custody of the minor child to the wife, and which awarded to the wife one half ownership of the furnishings of the family residence and sole ownership of the Lincoln Continental automobile. Likewise neither party complains that with respect to certain personal property in the form of corporate securities, registered in the names of both as joint tenants or as tenants by the entireties, the decree makes no determination of ownership or division other than that effected by operation of law.

We shall refer to additional pertinent facts as we discuss the issues.

## The Divorce

In her counter complaint the wife alleged that she had condoned acts of adultery committed by her husband up to October 1971, but that he had committed adultery in November and December 1971 which she had not condoned. She further alleged that the prior condoned adulteries were revived. In his answer the husband admitted those allegations, except as to lack of condonation. He alleged that all alleged acts of adultery had been condoned. By his signed and sworn pleading the husband made condonation the only issue on the question of adultery as the wife's ground for divorce.

However, the chancellor heard the evidence and decided the issue of adultery on the facts. Testimony of private investigators engaged by the wife showed that on 17 November and on 1 December 1971 the husband was in his night club, called the Big Dipper, a part of the over-all business operation. On those two evenings he paid particular attention to an unescorted young woman who had been described to the investigators by the wife and whom they referred to as Doreen. He sat with her and danced with her. One of the investigators said that the husband and Doreen were holding hands, that he placed his hand on her thigh, and that they kissed each other about the face and neck while dancing. The investigator related that on the 17 November occasion the husband left the table and went into his private office on the same floor. A few minutes later the young woman left the building through the main exit and entered the office through an outside stair and doorway. One investigator remained outside and watched the stair while the other one remained in the night club. Slightly over an hour later the young woman left the office by way of the outside stair. On the 1 December occasion, after sitting at the table with the same young woman for some time, the husband left and entered his office. About five minutes later the young woman entered the office by the same door. About forty five minutes later she came out.

The investigator described in some detail the layout and

furnishings of the office, which included a full length sofa. In addition to the two doors already described, there was a third which went into a storage room and, through that, into a small bar which was physically separate from the night club area.

The chancellor concluded that the evidence showed both disposition and opportunity to commit adultery and, in the absence of any plausible explanation of that evidence, he inferred, as the evidence permitted him to do, that the husband had in fact committed adultery on those two occasions.

The law defining the evidence necessary to permit an inference of adultery has been stated by the Court of Appeals frequently and clearly, and requires no further discussion. It is sufficient to repeat as a general statement what the Court of Appeals said in *Dougherty v. Dougherty,* 187 Md. 21, 48 A. 2d 451, at pages 27 and 28:

> "It is an established rule that the burden of proof in a suit for divorce is upon the complainant, and where adultery is charged the evidence must establish affirmatively that the alleged offense was committed. It is not necessary, however, to establish the charge of adultery by direct evidence of the commission of the act, for because of the clandestine nature of the offense it is rarely possible to obtain evidence of the commission of the act by the testimony of eyewitnesses. The offense may be inferred from the circumstances if the inference is the only natural and logical deduction to be drawn therefrom. To prove adultery, the circumstantial evidence must clearly establish (1) a disposition on the part of the defendant and the paramour to commit adultery, and (2) an opportunity to commit the offense. After considering these and all other facts and circumstances in the case, the court then determines whether the evidence would convince an unprejudiced and cautious person of the guilt of the

defendant. The permanent consequences of adultery are so injurious to the parties that the court will not accept as sufficient proof of its commission anything less than evidence so clear, satisfactory and convincing as to raise in the mind of a reasonable and unprejudiced person a natural inference of guilt. We do not consider the use of circumstantial evidence harsh or unreasonable, for it applies only to those who, by open disregard of the moral and social conventions and decencies of life, have shown themselves indifferent both to their marital obligations and to the opinion of others." (Citations omitted).

In *Breault v. Breault*, 250 Md. 173, 242 A. 2d 116, the Court of Appeals again stated and applied the same rule.

Appellant husband argues that the evidence here did not meet the test. He says that the evidence by which the wife attempted to show public displays of affection, from which a disposition could be inferred, fell short of the mark, because in a night club atmosphere it was appropriate for the owner to be personally attentive to the guests. He also argues that there was no evidence whatever to show an adulterous disposition on the part of the alleged paramour.

While an indifference to the proprieties as manifested by public displays of intimacy or affection is often the basis for finding an adulterous disposition, it is by no means the only basis. In *Abare v. Abare*, 221 Md. 445, 157 A. 2d 427, there was no evidence of any such public display, but the Court referred to evidence of repeated visits of the alleged paramour to the husband's home. It said that those visits "show abundant opportunity, and we think the circumstances of those visits are sufficient to warrant an inference of a disposition to commit adultery". The Court said further, at page 451:

"These facts seem to us sufficient to support an inference of a disposition on the part of both the husband and the corespondent to commit the

offense charged, as well as to show ample opportunity to commit it."

See also *Blankenship v. Blankenship*, 239 Md. 498, 212 A. 2d 294, and *Deckman v. Deckman*, 15 Md. App. 553, 292 A. 2d 112.

Thus it is clear that evidence of a disposition to commit adultery may be shown, not only by evidence of public displays of intimacy or affection or disregard of the proprieties, but by the very circumstances of the opportunity which the defendant spouse and alleged paramour cooperate in providing.

It would fly in the face of reason to say that the disposition of the alleged paramour to commit adultery must in every case be shown by evidence more direct to that question than the evidence of participation in providing the opportunity. It may well happen that an alleged paramour is unidentified, and remains unidentifiable. But as we said above, the very circumstances of the opportunity, made available with the cooperation and participation of the alleged paramour, may themselves be sufficient to show an adulterous disposition on the part of the alleged paramour as well as on the part of the defendant spouse.

Merely because circumstantial evidence of disposition and opportunity may justify an inference of adultery does not mean that such an inference is compelled. The evidence may call for an explanation. If an explanation is given, its credibility is for the chancellor to determine. Explanations given in *Abare, supra,* and *Blankenship, supra,* were not deemed credible. But in *Barnes v. Barnes,* 14 Md. App. 638, 287 A. 2d 808, the chancellor found the evidence sufficient to show both disposition and opportunity, and yet, on the basis of the explanatory testimony of both the husband and the alleged paramour, did not believe that they had in fact committed adultery. In affirming the decree denying the wife a divorce on the ground of adultery, this Court said, at page 647:

"This case is another of those in which the atmosphere of the trial, the appearance and

demeanor of the witnesses is invaluable in reaching a correct and just conclusion."

In the present case the evidence justified a finding of disposition and opportunity. There was no explanation, other than a flat denial that any of the material events occurred at all. The credibility of the denial was for the chancellor. The permissible findings supported an inference of adultery. The chancellor was not clearly erroneous in finding that the husband committed adultery. Maryland Rule 1086.

There was evidence that on 8 December 1971 the wife learned through her attorney that the investigators had gathered evidence which he felt was sufficient to prove adultery. The husband argues that she knowingly condoned the alleged adulteries of 17 November and 1 December by engaging in sexual intercourse with him on the night of 9 December. The wife denied that sexual relations took place on 9 December, and testified that the last occasion was on 6 December. On this conflicting evidence the chancellor found that the last intercourse took place on 6 December, before the wife had knowledge amounting to more than a suspicion, of the adulteries upon which her claim for divorce was based. He found that she had not condoned the adulteries. His finding was not clearly erroneous.

The wife was entitled to an absolute divorce on the ground of adultery, and the husband's complaint for a limited divorce on the ground of desertion was properly dismissed.

## The Business

Mr. Gosman testified that he operated about five different types of businesses; a restaurant and night club, mainly a liquor business, a grocery store, a freezer meat business, and a music recording business, all under the name of Dawnrose. The businesses are operated on property owned by the husband and wife as tenants by the entireties. He said that he operated as a sole proprietorship with himself as owner, and had always done so.

He said that he had been employed for 12 years, until

1957, as a milk route driver for Sealtest Dairies. When the parties moved into their home in 1952, he started raising vegetables and chickens, and producing eggs. He sold the products of this part time business on his route until 1957, when he resigned his employment and devoted full time to the egg and chicken and meat business. While the business was conducted from the home, he said his wife assisted by gathering eggs, selling eggs from the basement, and answering the telephone. The business was moved to its present location in 1961. He said that from that time his wife wanted nothing more to do with the business, although he agreed that on occasion she helped out by running errands, making deposits and writing checks while he was away, and in other ways on an infrequent basis. He said that about two years earlier his wife and daughter had helped him one day by wrapping meat for freezing. It appears that the delivery routes for eggs, chickens, produce, and meat, the business which was operated from the home, were discontinued.

The alcoholic beverage license was in the name of Mr. Gosman. Retail trade licenses were in both names. He said that when he changed from selling farm produce to retail trade and first obtained the trader's license, he thought it was required to be in both names because the property was in both names. The parties filed joint income tax returns, not partnership returns. Copies of two of them, for the years 1969 and 1970, were received in evidence. They showed the husband's occupation as self employed, and the wife's occupation as homemaker. The business schedule in each was on the form headed "sole proprietorship" and listed only the name of Francis H. Gosman, and only his social security number. The computation of social security self-employment tax was for Francis H. Gosman only, and his tax was calculated on the net earnings of the business. It was stipulated that the same method of tax reporting had been followed for prior years.

Mr. Gosman said that there was a Dawnrose bank account maintained for the business, and that in addition to himself, his wife and their son-in-law, who managed the grocery business, were authorized to sign checks. He said that his

wife wrote maybe one or two business checks a year, but that the same account was used for family expenses, household accounts, and charge accounts. He said that he performed all of the management functions of the business, purchasing, hiring and firing, and made all business decisions. He said that his wife did not participate, was not interested, and did not understand the business affairs. She put no funds in the business at any time.

Mrs. Gosman also described the beginnings of the chicken and egg business operated from the home. It progressed into retail routes, selling eggs, produce, and meats from refrigerated trucks. She said that during that time she was very busy. She raised the children and kept the house and cut the grass and answered the telephone continuously. She also checked and received deliveries, and sometimes made wholesale deliveries to restaurants. After the business was moved to the property on Baltimore Boulevard she said that she did a lot of things, including waiting on tables, counting and depositing money, interior decorating, and running errands. She did not indicate that she took any part in the management of the business.

Both of the adult children of the parties testified. Each recalled a few occasions when their mother helped out in the business, but not on a regular basis, and not in connection with its management. The daughter testified that Mr. Gosman had often said that the business was a family business, and everything they were doing was for the benefit of all of them, so they all worked in it. She said her father ran it completely.

There was no written agreement between the parties concerning the business. There was no claim that there was any oral agreement. The allegation by the wife in her counter complaint that the business was jointly owned found its sole evidentiary support in whatever inferences may be drawn from the facts, which we have attempted to recite in rather full detail. At no time did the wife refer to the business as a partnership, or to herself as a partner. These facts present no real conflict in legally significant

principle, but only in the degree of help provided by the wife in the operation of the business.

Upon this evidence, and the allegation and denial of joint ownership, the chancellor found himself "convinced that a partnership between the spouses did exist". He felt, however, that the wife's contribution to the enterprise did not warrant a finding that she should have an equal interest, and felt it more equitable that she have a 25% interest. Both appellant and appellee contend here, for different reasons, that this conclusion was erroneous. We must agree that it was.

Maryland Rule 1086 provides:

> "When an action has been tried by the lower court without a jury, this Court will review the case upon both the law and the evidence, but the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses."

Under this Rule, facts explicitly or implicitly found by the lower court, either upon undisputed evidence or upon conflicting evidence after judging questions of weight and credibility. will be accepted on appeal unless the finding is clearly erroneous. However, conclusions of law based upon the facts are reviewable in the appellate court for any error of law, *Space Aero v. Darling*, 238 Md. 93, 106, 208 A. 2d 699.

There were no explicit findings of fact relevant to the existence of either a partnership or a joint ownership. Since we discern no significant conflict in the evidence relating to either we are unable to identify any finding implicit in the chancellor's conclusion that a partnership existed.

On the question of whether a partnership existed we are not concerned with estoppel as to third parties, *McBriety v. Phillips*, 180 Md. 569, 577, 26 A. 2d 400, Code, Art. 73A, § 16, but whether, as between themselves, the acts of the parties show, or lead to the inference, that they had reached an agreement of partnership. Code, Art. 73A, § 7 (2) provides:

> "Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property."

If the parties had reached an agreement of partnership, then they were partners, even though the agreement was neither written nor expressed. On the other hand, if their conduct does not show that they had reached an agreement, there was no partnership. In *Cohen v. Orlove*, 190 Md. 237, 57 A. 2d 810, at pages 242 and 243, the Court of Appeals said:

> "Between the parties, partnership is a matter of intention proved by their expressed agreement or inferred from their acts and conduct. *Morgart v. Smouse*, 103 Md. 463, 468, 63 A. 1070, 115 Am. St. Rep. 367, 7 Ann. Cas. 1140. The real test as to whether or not a partnership exists is the intention of the parties to create a partnership."

In *Vlamis v. DeWeese*, 216 Md. 384, 140 A. 2d 665, the Court said, at page 389:

> "Whether or not a partnership exists, where there is no express agreement, is to be gathered from the intention of the parties revealed by their conduct and the circumstances surrounding their relationship and the transactions between them."

And in *Miller v. Salabes*, 225 Md. 53, 169 A. 2d 671, the Court said, at pages 55 and 56:

> "The applicable law is clear and well established. The existence of a partnership will not be presumed, but must be proved, 68 C.J.S., *Partnership*, § 51, with the burden of proving such existence resting upon the party having the affirmative of that issue. *McBriety v. Phillips*, 180 Md. 569, 26 A. 2d 400; *Beard v. Beard*, 185 Md. 178, 44 A. 2d 469. Between the parties, the existence of a partnership, *vel non*, is a matter of the parties'

intention proved by their expressed agreement, or inferred from their acts and conduct. And this intention is to be determined as it is disclosed by all of the transactions between the parties. *Townsend v. L. J. Appel Sons, Inc.,* 164 Md. 255, 257, 164 A. 679; *Vlamis v. DeWeese,* 216 Md. 384, 140 A. 2d 665; *Smith v. Smith,* 189 Md. 1, 53 A. 2d 15."

There can be no intention of the parties without a meeting of the minds on what that intention is. The Court of Appeals said in *Post v. Gillespie,* 219 Md. 378, 149 A. 2d 391, at page 384, that

"A contract is 'an agreement which creates an obligation * * * and such an agreement may be defined as the concurrence of two or more persons in a common intent to affect their legal relations * * *.' *Buffalo Steel Co. v. Kirwan,* 138 Md. 60, 64, 113 A. 628 (1921). A manifestation of mutual assent by the parties to a contract is essential to its formation. Restatement, *Contracts,* § 20 (1932)."

In considering a claim of partnership in a tavern business in *Beard v. Beard,* 185 Md. 178, 44 A. 2d 469, the Court of Appeals said, at page 185:

"We agree with the lower court that there was no partnership. Mrs. Beard was inexperienced in law and business and unfamiliar with the difference between stock ownership in a corporation and membership in a partnership. She may have thought she and her husband were, in a more than figurative sense, 'partners' in the cab business and in the tavern business. But the elements of a partnership are lacking, even in her own testimony. 'The main test of whether or not a partnership exists is the intention of the parties to create a partnership.' *Collier v. Collier,* 182 Md. 82, 88, 32 A. 2d 469, 471. The burden of proving a partnership is upon the party who asserts it. *Id.* The intention, at least on the husband's part, to create a partnership

is wholly lacking and is negatived in words and in
deeds, *e.g.*, in his liquor license and his income tax
returns."

In *Collier v. Collier*, 182 Md. 82, 32 A. 2d 469, cited and relied
upon in *Beard*, the Court of Appeals held that the wife was
not a partner in the husband's business, even though the
business was conducted on property owned by the entireties,
and partnership income tax returns were filed. In its opinion
in *Collier* the Court quoted from *Southern Can Co. v. Sayler*,
152 Md. 303, 136 A. 624, where it said, at pages 314 and 315,
quoting from 20 R.C.L. 831:

"The particular test as to the existence of a
partnership relation which is most widely accepted
today, and which is applicable especially as
between the parties themselves, irrespective of the
right of third persons, is that a partnership is
formed and exists only when it is the intention of
the parties that they should be partners.
Partnership contracts, like other contracts, are
governed by the intention of the parties. * * * This
intent may be manifest by the terms of their
agreement, the conduct of the parties to each other
under it, or by the circumstances generally
surrounding the transaction."

Further in *Collier* the Court of Appeals said, at pages 88 and
89:

"It is admitted that there was no written
partnership agreement entered into by the husband
and wife and she bases her claim largely on the fact
that she diligently worked at the business. 'The
services of the wife to which the husband is entitled
include those rendered by the wife in performance
of her household and domestic duties, as well as
those rendered by her while assisting the husband
in his business.' 30 C. J., *Husband and Wife*, Sec. 36,
page 521. With this statement of the law it would
require evidence of a satisfactory and unequivocal
nature, in addition to a wife's services, to warrant a

court in holding that she is a partner with the husband in the business conducted."

In *Smith v. Smith,* 189 Md. 1, 53 A. 2d 15, the Court of Appeals agreed with the lower court that the evidence proved that a partnership agreement had in fact been reached by the parties, but the evidence in *Smith* bears little similarity to the evidence in the present case.

When we consider all of the evidence in this case relating to the aggregation of businesses known collectively as Dawnrose, we find that evidence to be insufficient to establish that a partnership existed in that business. The judgment of the lower court that the wife was a partner was clearly erroneous, and must be set aside. Maryland Rule 1086.

Although the wife alleged that she was a joint owner of the business with her husband, and in her brief she argues that they were tenants by the entireties, we think that the distinction between the two kinds of tenancy is not material in this case. In *Eastern Shore Building and Loan v. Bank of Somerset,* 253 Md. 525, 253 A. 2d 367, the Court at page 532 quoted with approval what was said in *Schilbach v. Schilbach,* 171 Md. 405, 189 A. 432, as follows:

"A tenancy by the entireties is essentially a joint tenancy, modified by the common law theory that the husband and wife are one person. 1 *Tiffany on Real Property,* 645. Except for the fact that it cannot be defeated, during their lives, without the joint action of both, the same rules of law apply to it as to any other cotenancy."

We note that Code, Art. 50, § 9, then in effect, required an express provision to create a joint tenancy. The reenactment of that section as Art. 21, § 5-117, effective 1 January 1973, makes it clear that it applies to personal as well as to real property.

The Court of Appeals recognized in *Brewer v. Bowersox,* 92 Md. 567, 48 A. 1060, that a tenancy by the entireties may be created in personalty. At page 572. See *Whitelock v. Whitelock,* 156 Md. 115, 143 A. 712.

The contention that the parties owned the business jointly must also fail. In *Eder v. Rothamel,* 202 Md. 189, 95 A. 2d 860, the Court of Appeals said, at page 192:

> "The characteristics of a joint tenancy are its four unities; that is to say, the unity of interest, unity of title, unity of time, and unity of possession. *Chew v. Chew,* 1 Md. 163; *2 American Law of Property,* Sec. 6.2; and *2 Tiffany, Real Property,* 3rd Ed. Section 425. These must coincide — if any is lacking, the estate cannot be one of joint tenancy."

In the evidence in this case the unities of interest, title, time, and possession, which must coincide to create joint ownership, were simply not shown to exist, much less to coincide.

Under the wife's invocation of the power of the court under Code, Art. 16, § 29, to hear and determine all questions in connection with the ownership of personal property, the chancellor should have decreed that Francis H. Gosman was the sole owner of the business known as Dawnrose.

### *Alimony, Child Support, Fees and Expenses*

Appellant contends here that the chancellor erred in his award to the wife of alimony, child support, counsel fees, and detective fees. In *Quinn v. Quinn,* 11 Md. App. 638, 276 A. 2d 425, Chief Judge Murphy, writing for this Court, reviewed numerous cases in which the Court of Appeals had laid down the general rule that in such matters the chancellor is necessarily entrusted with wide discretion which should not be disturbed on appeal unless it was arbitrarily used or his judgment clearly wrong.

We conclude that those parts of the decree which ordered payments for alimony, child support, and expenses were arrived at through a proper exercise of the chancellor's discretion, and should be affirmed. Regarding the money withdrawn by Mrs. Gosman from the business bank account, she testified that she still had $10,000.00. She used part of it for establishing a new home for herself and the

daughter, and presumably used some for living expenses after December 1971. Under all the circumstances, we think that the portion still in her possession is not an unreasonable reserve.

Alimony is a money allowance payable under a judicial decree by a husband at stated intervals to his wife, or former wife, during their joint lives or until the remarriage of the wife, so long as they live separately, for her support and maintenance. *Knabe v. Knabe,* 176 Md. 606, 6 A. 2d 366, *Simpson v. Simpson,* 18 Md. App. 626, 308 A. 2d 410. Alimony is always subject to reconsideration and modification by the court in the light of changed circumstances. When a court fixes the amount of alimony, it does so on the basis of the circumstances shown by the evidence to exist at that time.

The circumstances under which the amount of alimony payable to Mrs. Gosman was fixed appear to be the evidence of her needs, and the evidence that she was not employed, and had no income except a small amount of interest on a savings deposit. The final dissolution of the marriage of the parties will result in Mrs. Gosman's becoming the owner of a one half interest in the equity in several parcels of real estate, including the property on which the Dawnrose business is conducted, and in some corporate securities. The chancellor had no basis for determining the net income or net cash flow benefit, if any, to Mrs. Gosman from these assets, and such benefit does not appear to have been one of the circumstances considered in determining the amount of alimony. What effect this ownership of property in common may have on the future circumstances of the parties must await resolution by them of the use or disposition of those assets.

> *Decree modified to hold that Francis H. Gosman is the sole owner of the business known as Dawnrose, and as modified, affirmed.*
> *Costs to be paid by Francis H. Gosman.*